**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  16-20387—CV-ALTONAGA
(Underlying Criminal Case No.: 13-20334-CR-ALTONAGA)**

JOSEPH PETER CLARKE,

      Movant,

vs.

UNITED STATES OF AMERICA,

      Respondant.

_____/

**REPLY IN SUPPORT OF MOTION TO VACATE, CORRECT, OR SET ASIDE
SENTENCE PURSUANT TO 28 U.S.C. § 2255**

      Joseph Clarke, through undersigned counsel, files this reply in support of his motion to vacate, correct, or set aside his sentence, pursuant to 28 U.S.C. § 2255. As explained below, and contrary to the government's arguments, Mr. Clarke is actually innocent of the 18 U.S.C. § 924(c) offense, he does not qualify for the enhancement under § 3559(a), and his attorney was ineffective for not making certain viable arguments that Mr. Clarke did not qualify for the § 3559 enhancement.  Accordingly, he is entitled to relief.

**I.    Mr. Clarke is actually innocent of his conviction under 18 U.S.C.
§ 924(c).**

      Contrary to the government's argument, *Johnson* invalidated the residual clause of § 924(c) and Mr. Clarke's conviction of conspiracy to commit Hobbs Act robbery no longer qualifies as a predicate crime of violence.

1

### A. *Johnson* invalidated § 924(c)'s residual clause.

To reiterate, *Johnson* held the residual clause in 18 U.S.C. § 924(e)(2)(B)(ii) ("otherwise involves conduct that presents a serious risk of physical injury to another") to be unconstitutionally vague because the "indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by Judges."  135 S. Ct. at 2557.  In the Supreme Court's view, the process espoused by *James v. United States*, 550 U.S. 192 (2007), of determining what is embodied in the "ordinary case" of an offense, and then of quantifying the "risk" posed by that ordinary case, was constitutionally problematic: "[t]he residual clause offers no reliable way to choose between . . . competing accounts of what 'ordinary' . . . involves."  *Id.* at 2558.

The government argues that the residual clause in § 924(c) is distinguishable from the residual clause invalidated in *Johnson*.  While these two clauses are not identical word for word, there is no material distinction between them.  The government's arguments to the contrary are unpersuasive, as explained below.

### i. Section 924(c)'s residual clause is not "markedly narrower" than the ACCA residual clause at issue in *Johnson*.

First, contrary to the government's suggestion, the minor textual differences[1] between the residual clause of the ACCA at issue in *Johnson* and the residual clause of § 924(c) (and § 16(b) and § 3559(c)) have no impact on the constitutional

---

[1]  In pertinent part, the ACCA residual clause defines a "violent felony" as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii).  Section 924(c)(3)(B) defines a crime of violence as one that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

analysis.  In the Eleventh Circuit, and in other circuits as well, they have always been regarded as analogous and analyzed identically.  *See United States v. Keelan*, 786 F.3d 865, 871 n.7 (11th Cir. 2015) (describing the ACCA residual clause and the residual clause of § 16(b) as "analogous"); *United States v. Vivas-Ceja*, 808 F.3d 719, 722 (7th Cir. 2015) ("§ 16(b) substitutes 'substantial risk' for the residual clause's 'serious potential risk.'  Any difference between the two phrases is superficial.  Just like the residual clause [in § 924(c)], § 16(b) offers courts no guidance to determine when the risk involved in the ordinary case of a crime qualifies as 'substantial.'"); *Jimenez-Gonzales v. Mukasey*, 548 F.3d 557, 562 (7th Cir. 2008) (noting that, "[d]espite the slightly different definitions," the Supreme Court's respective analyses of the ACCA and § 16(b) "perfectly mirrored" each other); *see also United States v. Gomez-Leon,* 545 F.3d 777 (9th Cir. 2008); *United States v. Coronado-Cervantes*, 154 F.3d 1242, 1244 (10th Cir. 1998); *United States v. Kirk*, 111 F.3d 390, 394 (5th Cir. 1997); *United States v. Bauer*, 990 F.2d 373, 374 (8th Cir. 1993) (describing the differences between the statutes as "immaterial" and holding that U.S.S.G. § 4B1.2, which uses the ACCA language, "is controlled by" a decision that interprets § 16(b)).

Federal courts have historically and regularly analyzed and imported decisions from one residual clause to another due to their substantial similarities.[2]

---

[2]  Though the comparison tends to specifically address 18 U.S.C. § 16(b), that statute is identical to § 924(c)(3)(B).  *See, e.g., Chambers v. United States*, 555 U.S. 122, 133, n.2 (2009) (citing circuit splits on § 16(b) in the context of a residual clause case because § 16(b) "closely resembles ACCA's residual clause") (Alito, J., concurring). *See also United States v. Ayala*, 601 F.3d 256, 267 (4th Cir. 2010) (relying on an ACCA case to interpret the definition of a crime of violence under § 924(c)(3)(B)); *United States v. Aragon*, 983 F.2d

Although the risk at issue in the ACCA is a risk of injury, and the risk at issue in § 924(c) is a risk that force will be used against person or property, this difference is immaterial to the due process problem and has no impact on the applicability of *Johnson* to this case. This is because the Supreme Court's holding in *Johnson* did not turn on the type of risk, but rather how a court assesses and quantifies the risk.[3]

The two-step process is the same under the ACCA and § 924(c) (and § 16(b) and § 3559(c)). All four statutes require courts first to picture the "ordinary case" embodied by a felony, and then decide if it qualifies as a crime of violence by assessing the quantum of risk posed by the "ordinary case."[4]

---

1306, 1314 (4th Cir. 1993) (same); *Roberts v. Holder*, 745 F.3d 928, 930-31 (8th Cir. 2014) (using both ACCA cases and § 16(b) cases to define the same "ordinary case" analysis); *United States v. Sanchez-Espinal*, 762 F.3d 425, 432 (5th Cir. 2014) (despite the fact that the ACCA talks of risk of injury and § 16(b) talks of risk of force, "we have previously looked to the ACCA in deciding whether offenses are crimes of violence under § 16(b)").

[3] Of course, many federal and state criminal laws include "risk" standards that employ adjectives similar to those in the ACCA and § 924(c), such as "substantial," "grave," and "unreasonable." And the Supreme Court in *Johnson* said it did not mean to call most of these into question. But, as Justice Scalia's majority opinion observed, that is because the vast majority of such statutes require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion; in other words, applying such a standard to "real-world conduct." By contrast, the ACCA's residual clause, and § 924(c)(3) too, require it to be applied to "an idealized ordinary case of the crime," an "abstract inquiry" that "offers significantly less predictability." *Johnson*, 135 S. Ct. at 2558.

[4] The ACCA, § 924(c), § 16(b), and § 3559(c) require courts to discern what the ordinary case of a crime is by using the categorical approach. Courts may not consider the factual means of committing any given offense, but must consider the nature of the offense in the "ordinary case," regardless of whether the ACCA, § 924(c)(3)(B), or § 16(b) is at issue. *See Keelan*, 786 F.3d at 871 (adopting "ordinary case" analysis for identical provision in § 16(b)); *see also United States v. Naughton*, 621 F. App'x 170, 178 (4th Cir. Sept. 2, 2015) (applying the ordinary case inquiry to the residual clause of § 924(c)); *Fuertes*, 805 F.3d at 498; *United States v. Ramos-Medina*, 706 F.3d 932, 938 (9th Cir. 2012) (citing *James* as the source of the "ordinary case" analysis required by § 16(b)); *United States v. Butler*, 496 F. App'x 158, 161 n.4 (3d Cir. 2012); *Evans v. Zych*, 644 F.3d 447, 453 (6th Cir. 2011); *United States v.*

Section 924(c)'s residual clause, like the ACCA residual clause, thus requires the "ordinary case" analysis to assess the risk involved in a predicate offense, and how risky that ordinary case is—the identical analytical steps that brought down the ACCA residual clause—and thus § 924(c)'s residual clause cannot survive constitutional scrutiny under the due process principles reaffirmed in *Johnson*. As a consequence, the residual clause cannot be used to support a conviction under § 924(c).

The government incorrectly asserts the residual clause of § 924(c) is "markedly narrower" than the ACCA's residual clause. It asserts that § 924(c)'s residual clause is temporally "narrower" than the ACCA's residual clause because it looks to the risks "that arise during the commission of the offense." Civ. DE 22:6. But this simply has no bearing on the threshold "ordinary case" inquiry that the Supreme Court determined is impossibly arbitrary, and that the Eleventh Circuit held in *Keelan* applies to the precise language at issue here.[5] More importantly,

---

*Serafin*, 562 F.3d 1104, 1108 (10th Cir. 2009); *Van Don Nguyen v. Holder*, 571 F.3d 524, 530 (6th Cir. 2009) (considering § 16(b) and concluding that "[t]he proper inquiry is one that contemplates the risk associated with the proscribed conduct in the mainstream of prosecutions brought under the statute."); *United States v. Green*, 521 F.3d 929, 932 (8th Cir. 2008); *United States v. Sanchez-Garcia*, 501 F.3d 1208, 1213 (10th Cir. 2007); *United States v. Acosta*, 470 F.3d 132, 134 (2d Cir. 2006); *United States v. Amparo*, 68 F.3d 1222, 1225 (9th Cir. 1995).

[5] That inquiry requires the Court to imagine the facts that typically make up the predicate crime. That inquiry involves asking whether, for example, "the ordinary instance of witness tampering involve[s] offering a witness a bribe? Or threatening a witness with violence?" *Johnson*, 135 S. Ct. at 2557. Or whether the "ordinary burglar invade[s] an occupied home by night or unoccupied by day?" *Id.* at 2558. Or "[d]oes the typical extortionist threaten his victim in person with the use of force, or does he threaten his victim by mail with the revelation of embarrassing personal information?" *Id.* Or whether the "ordinary case of vehicular flight" is "the person trying to escape from police by speeding or driving recklessly . . . [o]r is it instead the person driving normally who, for

5

focusing on the risk during the predicate offense, § 924(c)'s residual clause does not call for any narrower an inquiry than the ACCA's residual clause.  The Supreme Court's determinations whether certain crimes were sufficiently risky under the ACCA also focused on risk during the commission of the offense, rather than some time later after it had ended.  *See, e.g., James*, 550 U.S. at 203-04, 210 (looking to conduct that typically occurs "while the crime [attempted burglary] is in progress," "while the break-in is occurring," and "during attempted burglaries"); *Sykes v. United States*, 131 S. Ct. 2267, 2273-74 (2011) (same for crime of vehicular flight from police).

Likewise, the supposedly "typical" conduct the Court found sufficiently risky in the ACCA cases involved conduct during the predicate crime, rather than at some later time.  *See, e.g., James*, 550 U.S. at 211-12 ("An armed would-be burglary may be spotted by a police officer, a private security guard, or a participant in a neighborhood watch program.  Or a homeowner . . . may give chase"); *Sykes*, 131 S. Ct. at 2274 (driver's knowingly fleeing law enforcement officer held a violent felony given risk that, during pursuit, driver might cause accident or commit another crime to avoid capture).  In no case did the Supreme Court actually rely on "post-

---

whatever reason, fails to respond immediately to a police officer's signal?" *Sykes v. United States*, 131 S. Ct. 2267, 2291 (2011) (Kagan and Ginsberg, JJ., dissenting).  If a court cannot conjure the idealized "typical" scenario in which an offender embarks on the predicate crime, it cannot proceed to determine how the offense is likely to play out and, thus, cannot gauge the riskiness of the probable ensuing conduct—whether that conduct occurs during or after the commission of the crime.  As the Ninth Circuit explained, "[t]his reasoning applies equally whether the inquiry considers the risk of violence posed by the commission and the aftereffects of a crime, or whether it is limited to consideration of the risk of violence posed by acts necessary to satisfy the elements of the offense." *Dimaya*, 803 F.3d at 1119.

offense conduct" to find a predicate crime sufficiently risky under the ACCA's residual clause.  And it expressed doubt about whether this would be a statutorily permissible basis to qualify an offense a "crime of violence."  *See Chambers*, 555 U.S. at 129 (questioning, though assuming *arguendo*, "the relevance of violence that may occur long after" crime of failing to report for penal confinement is complete). Moreover, in assessing riskiness, § 924(c)(3)(B) and its twin, § 16(b)—just like the ACCA—looks not just at the initiation of the predicate crime (*e.g.,* the burglar's climbing through the window), but beyond that, through the entire "course" of the offense to its completion (*e.g.,* while the burglar is in the house, until he successfully flees).  *See Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004) ("[B]urglary, by its nature, involves a substantial risk that the burglary will use force against a victim in completing the crime.").

> ### ii.     The list of enumerated offenses preceding the ACCA residual clause was not dispositive to *Johnson.*

Contrary to what the Government argues, the Supreme Court's decision in *Johnson* did not hinge on the list of enumerated offenses that precedes the ACCA's residual clause.  Although the Supreme Court noted that the enumerated offenses which precede the ACCA residual clause are an *added* problem, the Supreme Court's decision in *Johnson* did not hinge on the list of enumerated offenses that precede the ACCA's residual clause.  *Johnson*, 135 S. Ct. at 2558.  The Supreme Court said the residual clause was void for vagueness based on the "two features" turning on the ordinary case—not a third feature turning on the enumerated offenses.  *Id.* at 2557; *see also Vivas-Ceja*, 808 F.3d at 722 ("The list [of enumerated

offenses] itself wasn't one of the 'two features' that combined to make the clause unconstitutionally vague.") (citing *Johnson*, 135 S. Ct. at 2557).

Additionally, as a matter of pure logic, *Johnson* could not have turned on the enumerated offenses.  The ordinary case problem exists **with or without** enumerated offenses because a lower court must determine the idealized ordinary case of the predicate offense before it can even begin to evaluate the type of risk presented by that offense.  *Id.* at 2557-58.  Because courts cannot answer the *threshold question* with any certainty, logic compels that the ordinary case analysis itself renders the residual clause unconstitutionally void.  If a court cannot determine the ordinary case of the predicate offense, then a court cannot proceed with its risk analysis—enumerated offenses or not.  The *Johnson* Court made clear that the "ordinary case" problem was really the central distinguishing and dispositive feature: "*More importantly*, almost all of the cited laws require gauging the riskiness of conduct in which an individual engages on a particular occasion. . . . The residual clause, however, requires application of the 'serious potential risk' standard to an idealized ordinary case of the crime."  *Johnson*, 135 S. Ct. at 2561 (emphasis added).  For this very reason, *Dimaya*, 803 F.3d at 1117-18, *Vivas-Ceja*, 808 F.3d at 722, and *Edmundson,* 153 F. Supp. 3d at 891, all flatly rejected the Government's argument that *Johnson* turned on the enumerated offenses, and this Court should do the same.

> **iii.   The same confusion surrounds § 924(c)'s residual clause (and § 16(b)'s § 3559(c)'s residual clauses) as surrounded the ACCA's, and, in any event, this was not a dispositive part of the *Johnson*'s holding.**

To the extent the government argues that § 924(c)(3)(B), unlike the ACCA, is not shrouded in confusion, that is incorrect.  The Government glosses over the fact that cases addressing § 924(c) and § 16(b) regularly rely on ACCA cases, and *vice-versa*.  Confusion over the meaning of § 924(c)'s residual clause is subsumed in the confusion surrounding the ACCA because federal courts use the same body of precedent to interpret all three.  Thus, confusion surrounding the ACCA reflects difficulties with § 924(c)(3)(B) and § 16(b), even without the same explicit chorus of criticism.  Moreover, some circuits have split over how to apply § 16(b), which is additional evidence of the confusion surrounding the language of the residual clause of § 16(b) and its twin in § 924(c)'s residual clause.  *See e.g., Chambers*, 555 U.S. at 133 (Alito and Thomas, JJ., concurring) (citing some illustrative cases).  There is no reasonable way to separate the level of confusion over the scope of these three residual clauses.

In any event, as the Seventh Circuit explained in *Vivas-Ceja*, "[t]hat the [ACCA] residual clause had persistently eluded stable construction, was *additional* evidence that served to 'confirm its hopeless indeterminancy.' *Johnson*, 135 S. Ct. at 2558.  The chaotic state of the caselaw was not a necessary condition to the Court's vagueness determination." 808 F.3d at 722 (citation and internal quotation marks omitted) (emphasis added).  Lastly, it is not a necessary condition to strike down the § 924(c) residual clause.  *See also Dimaya*, 803 F.3d at 1119 ("That the

Supreme Court has decided more residual clause cases than § 16(b) cases, however, does not indicate that it believes the latter clause to be any more capable of consistent application.").

**B.  Conspiracy to commit Hobbs Act robbery no longer qualifies a crime of violence under § 924(c).**

The government contends that conspiracy to commit Hobbs Act robbery continues to qualify as a crime of violence because *Johnson* did not invalidate the residual clause of § 924(c).  However, for the above reasons, the residual clause is invalid and cannot be used to establish a predicate offense under § 924(c).  Notably, the government does not argue in its response filed May 1, 2017, that it qualifies under the element's clause of § 924(c).  Additionally, the government fails to recognize that it conceded in Mr. Clarke's co-defendant's case that Hobbs Act conspiracy cannot serve as a predicate offense for a § 924(c) conviction.  *See United States v. Bobby Jenkins*, 13-20334-CR-ALTONAGA, DE 185 (November 9, 2016).  The same concession should apply to Mr. Clarke.

In sum, none of the textual distinctions identified by the Government establish a material difference between the unconstitutional residual clause in the ACCA and the unconstitutional residual clauses in § 16(b) and § 924(c).  Indeed, at no point does the government address the Solicitor General's concession that the identical residual clause in § 16(b) was "equally susceptible to . . . the central objection" in *Johnson*—namely, that they both "require[d] a court to identify the ordinary case of the commission of the offense and to make a commonsense

judgment about the risk of confrontations and other violent encounters." *Johnson*,

U.S. Supp. Br., 2015 WL 1284964, at 22-23.  That omission is telling.

### C. Procedural default does not bar relief.

In its response, the government correctly acknowledges that procedural

default is excused where a defendant is actually innocent of the offense.  *See*

*Bousley v. United States*, 523 U.S. 614, 623 (1998) (recognizing actual innocence

exception to procedural default in § 924(c) context where petitioner "demonstrate[s]

that in light of all the evidence, it is more likely than not that no reasonable juror

would have convicted him") (citation omitted).

Here, Mr. Clarke is actually innocent of the § 924(c) offense because his

predicate offense is not a crime of violence.  Because the predicate offense is not a

crime of violence, it is impossible for the government to prove one of the required

elements of the § 924(c) offense.  *See, e.g.*, *United States v. Adams*, 814 F.3d 178,

183 (4th Cir. 2016) (defendant successfully "show[ed] 'factual innocence' as

contemplated by *Bousley* because he has shown that it is impossible for the

government to prove one of the required elements of a § 922(g)(1) charge—that the

defendant was a convicted felon at the time of the offense," because the underlying

conviction was legally not a felony).  Thus, the government's assertion of procedural

default rises and falls with the merits of the argument that the predicate offense is

not a crime of violence.

As demonstrated above in subsection (B), Mr. Clarke has shown that it is not, and he is therefore actually innocent of the § 924(c) offense.  Accordingly, procedural default poses no bar to relief here.

In addition, any procedural default in this case is also excused by cause and prejudice.  Mr. Clarke can show cause because he was sentenced after the United States Supreme Court had squarely rejected a vagueness challenge to the ACCA's residual clause—not once but twice.  *Sykes v. United States*, 564 U.S. 1, 15 (2011); *James v. United States*, 550 U.S. 192, 210 n.6 (2007).

The Supreme Court expressly overruled that precedent in *Johnson*, 135 S. Ct. at 2563, and gave it retroactive application in *Welch v. United States*, 136 S. Ct. 1257 (2016).  The Supreme Court has recognized that cause exists under precisely these circumstances—namely, where it "articulate[s] a constitutional principle that had not been previously recognized," that "explicitly overrule[d] one of [its] precedents," and "is held to have retroactive application."  *Reed v. Ross*, 468 U.S. 1, 17 (1984).  Under those rare circumstances, which exist here, the Court explained that "there will almost certainly [be] no reasonable basis upon which an attorney previously could have urged a . . . court to adopt the position that this Court has ultimately adopted."  *Id.*

The government asserts that "perceived futility" does not constitute cause, citing *Bousley v. United States*, 523 U.S. 614, 623 (1998).  But neither *Bousley* nor *Engle v. Isaac*, 456 U.S. 107, 130 n.5 (1982), upon which it relied, addressed the situation here.  Indeed, those cases were addressing futility in the face of adverse

precedent by a "particular" state or lower federal court, and they were motivated principally by a concern to afford *state* courts an initial opportunity to reconsider its precedent.  *See Smith v. Murray*, 477 U.S. 527, 535 (1986).  No such federalism considerations exist here.  And in light of the binding U.S. Supreme Court precedent, a vagueness challenge would have been frivolous not just in one "particular" court, but rather in every court in the entire country.  In that sense, the futility here was not "perceived;" it was real and absolute.  To the extent the government is arguing that futility can *never* establish cause, even in the face of adverse High Court precedent directly on point, that argument is contrary to both *Reed* and notions of fundamental fairness.

Finally, the government is incorrect that Mr. Clarke cannot establish prejudice. As demonstrated above, he is actually innocent of his § 924(c) offense.  As a result, the prejudice is manifest.  Consequently, conspiracy to commit Hobbs Act robbery is not a crime of violence, and Mr. Clarke's conviction must be vacated.

## II.  Mr. Clarke no longer qualifies for the § 3559(c) enhancement.

Contrary to the government's arguments, the residual clause in § 3559(c) is unconstitutionally vague after *Johnson*.  Accordingly, this Court cannot rely on it to classify the predicate offenses in this case as "serious violent felonies."

### A. *Johnson* invalidates the residual clause of § 3559(c).

The government argues that *Johnson* did not invalidate the residual clause of § 3559(c) for the same reasons it did not invalidate § 924(c)'s residual clause: that § 3559(c) is "materially narrower" than the residual clause of the ACCA, that

13

§ 3559(c) does not contain the list of enumerated offenses, and that § 3559(c) does not suffer from the same confusion as the ACCA's residual clause.  *See* DE 22:11-14.

The residual clause in § 3559(c) is nearly identical to that in 18 U.S.C. § 924(c) and 18 U.S.C. § 16(b).  The only difference is that § 3559(c) does not cover physical force against the property of another.[6]   Because the residual clause of § 3559(c) is nearly identical to that of § 924(c), the government's arguments fail for the same reasons they fail as applied to § 924(c) as stated above in Point I(A).  Furthermore, despite arguing that § 3559(c)'s residual clause does not suffer from the same confusion as that of the ACCA, the government concedes that the same categorical "ordinary case" inquiry that led the Supreme Court to conclude that the ACCA residual clause is unconstitutionally vague applies to § 3559(c).  *See* DE 22:11.  In that vein, the Eleventh Circuit has relied on cases analyzing serious violent felonies under § 3559(c) in its analysis of violent felonies under the ACCA.  *See e.g.*, *United States v. Proch*, 637 F.3d 1262 (11th Cir. 2011) (relying on case analyzing whether an escape conviction qualified as a serious violent felony under § 3559(c) in its analysis of whether it qualified as a violent felony under the ACCA).

Consequently, like the residual clause of the ACCA and § 924(c), the residual clause of § 3559(c) is void for vagueness after *Johnson*.

---

[6] Compare § 3559(c)(2)(F)(ii) (offense that "by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense") with § 924(c)(3)(B) (offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense") and § 16(b) (offense "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used on the course of committing the offense").

**B. Without the residual clause, Mr. Clarke's current and prior convictions no longer qualify as "serious violent felonies" under § 3559(c).**

The government concedes that Mr. Clarke's conviction for fleeing and eluding does not qualify as a serious violent felony.  Civ. DE 22:14.  Furthermore, the government did not argue in its response that Mr. Clarke's robbery conviction continues to qualify as a serious violent felony.  The government only contends that Mr. Clarke's conviction for burglary of an unoccupied structure and his current conviction of conspiracy to commit Hobbs Act robbery still qualify as serious violent felonies.  It should be noted that the government misstates Mr. Clarke's prior conviction as one for "armed burglary."  Mr. Clarke was not convicted of armed burglary, but merely burglary of an unoccupied structure.  That is confirmed in both the PSI (¶ 36) and the Notice of Intent to Seek Enhanced Penalties Under 18 U.S.C. § 3559(c) filed by the government on August 2, 2013.  *See* Crim. DE 28.

In its response, the government seems to concede that those convictions do not qualify as serious violent felonies under the elements clause of § 3559(c), and instead only argues that they continue to qualify under the residual clause.  However, for the reasons stated above, the residual clause is invalid and cannot be used to support an enhancement under § 3559(c).

Additionally, the government erroneously argues that the Court should look at the underlying facts of Mr. Clarke's convictions in determining whether they constitute serious violent felonies.  However, the Court cannot look to the underlying facts in making that determination.  Instead, it must use the categorical

approach, looking only to the elements of the crimes of conviction.  *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013).

Regardless of whether burglary of a structure qualifies under the elements clause, contrary to the government's argument, burglary of an unoccupied structure does not qualify as a serious violent felony because it has a maximum sentence of only five years.  The government argues that the conviction should qualify because Mr. Clarke was sentenced as a habitual felony offender, making the maximum sentence for Mr. Clarke ten years.  However, the government cites no authority to support its claim that the Court should look beyond the language of a statute itself and apply it to a particular defendant.  Under the plain language of § 3559(c), this Court should look at the maximum sentence of the "offense" *per se*, and not as applied to Mr. Clarke.  When doing so, burglary of a structure has a maximum sentence of five years and thus does not qualify as a serious violent felony.

Finally, as stated above, the government has conceded that conspiracy to commit Hobbs Act robbery no longer qualifies as predicate offense under § 924(c) in Mr. Clarke's co-defendant's case.  Given that the analysis as to what constitutes a crime of violence under § 924(c) and what constitutes a serious violent felony under § 3559(c) is the same, logic dictates that that concession should apply to the § 3559 enhancement as well.  The government in this case gives no reason why the analysis would be different under § 3559(c).

For these reasons, as well as the reasons stated in the supplemental memorandum of law, Mr. Clarke's conviction of conspiracy to commit Hobbs Act

robbery, and his prior convictions of armed robbery, burglary of an unoccupied structure, and fleeing and eluding do not qualify as "serious violent felonies." Thus, Mr. Clarke cannot be enhanced under § 3559(c).

### III. Mr. Clarke was denied effective assistance of counsel when his trial counsel failed to make viable arguments that his prior convictions did not qualify as § 3559(c) predicates.

The government did not analyze Mr. Clarke's claim that his counsel was ineffective for 1) failing to argue that burglary of an unoccupied structure did not qualify as a § 3559(c) predicate because it has a maximum penalty of five years, 2) failing to argue that burglary of a structure does not qualify as a serious violent felony under the residual clause, and 3) failing to present an affirmative defense that Mr. Clarke's convictions for burglary and fleeing and eluding were nonqualifying felonies under § 3559(c)(3)(A). It merely states in its conclusion that Mr. Clarke's claims "fail under the *Strickland* test." Civ. DE 22:15. In fact, Mr. Clarke's trial counsel was ineffective for those reasons.

If Mr. Clarke's attorney had argued an affirmative defense, he would have been able to show by clear and convincing evidence that both the burglary and the fleeing and eluding were nonqualifying offenses. First, he would have shown that during the commission of the burglary, neither Mr. Clarke nor his co-defendant used a firearm or a dangerous weapon. He would have been able to show that they entered the store by prying open the back door, that neither of them possessed a dangerous weapon or firearm, that no one was present in the store when they entered, and that they did not use a dangerous weapon or firearm once inside the

store.  The government did not articulate any legal or factual argument to the contrary.  It simply stated that Mr. Clarke "could not have satisfied the affirmative defense requirements of 3559(c) given that he used a tool to pry into victimized Circuit City store."  Civ. DE 22:9.  However, the government cited nothing to support its statement that Mr. Clarke used a tool to pry into the store. Furthermore, the government gives no description of the alleged tool that would qualify as a dangerous weapon.  Instead, the description of the crime in the PSI supports what Mr. Clarke's trial counsel could have shown at sentencing: that there was no firearm or dangerous weapon used in the commission of the crime.   The PSI states that "the defendant and his co-defendant unlawfully entered Circuit City store and removed property from the business valued at $40,000.  The defendants pried open the rear emergency door in order to gain access into the business."  PSI ¶ 36.  Accordingly, had Mr. Clarke's trial counsel argued an affirmative defense that burglary did not qualify as a predicate offense, he would have been able to show by clear and convincing evidence that it was a nonqualifying offense.

Similarly, Mr. Clarke's trial counsel could have shown that Mr. Clarke's conviction for fleeing and eluding was a nonqualifying offense.  According to the PSI, officers were dispatched to an area regarding a domestic dispute.  When they arrived, they observed Mr. Clarke leaving in the alleged victim's car.  The officers followed Mr. Clarke and conducted a traffic stop of the car.  Mr. Clarke stopped the car, and the officers arrested him.  Mr. Clarke's trial counsel would have been able to show by clear and convincing evidence those were the facts underlying the fleeing

and eluding conviction.  With that, trial counsel would have been able to show that the offense did not involve a firearm or a dangerous weapon and that no one was injured.  As a result, this prior conviction would not qualify as a predicate offense, and Mr. Clarke would not qualify for the § 3559(c) enhancement.

Mr. Clarke's trial counsel was also ineffective for failing to argue that Mr. Clarke's burglary conviction had a maximum sentence of five years and thus could not qualify as a serious violent felony, and that burglary of a structure was not a serious violent felony under the residual clause.  Notably, the government did not address whether these actions constitute ineffective assistance of counsel.

Mr. Clarke's trial counsel's performance fall below an objective standard of reasonableness, and Mr. Clarke was prejudiced as a result.  Thus, under *Strickland*, Mr. Clarke did not receive effective assistance of counsel and his sentence should be vacated.

**IV.  Mr. Clarke's entire sentence should be vacated under the sentencing package doctrine.**

Contrary to the government's claim, if this Court grants any of Mr. Clarke's claims, it must vacate his entire sentence under the sentencing package doctrine as outlined in the supplemental memorandum of law.  Civ. DE 20:29-30.

## **CONCLUSION**

For the above reasons, this Court should vacate Mr. Clarke's sentence.


Respectfully submitted,

**MICHAEL CARUSO**
**FEDERAL PUBLIC DEFENDER**

By:       _/s/Julie Holt_____
          Assistant Federal Public Defender
          Florida Bar No.: 95997
          150 W Flagler Street, Suite 1700
          Miami, Florida 33130
          Tel: 305-530-7000
          julie_holt@fd.org

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on **May 8, 2017**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.   I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Julie Holt*
Julie Holt