UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-20387-CIV-ALTONAGA
     (13-20334-CR-ALTONAGA)
MAGISTRATE JUDGE P. A. WHITE

JOSEPH PETER CLARKE,

     Movant,

v.

UNITED STATES OF AMERICA,

     Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE RE §2255 CHALLENGING CONVICTIONS & SENTENCES POST-JOHNSON

### I. Introduction

     Initially, the movant, **Joseph Peter Clarke**, while proceeding *pro se*, filed this §2255 proceeding challenging the constitutionality of his convictions and sentences for conspiracy to commit Hobbs Act Robbery, conspiracy to possess with intent to distribute five or more kilograms of cocaine, felon in possession of a firearm in and affecting interstate commerce, and using and carrying a firearm and possession of the firearm in furtherance of a crime of violence, entered following a jury verdict in **Case No. 13-20334-Cr-Altonaga.**

     This Cause has been referred to the Undersigned for consideration and report, pursuant to 28 U.S.C. §636(b)(1)(B), ©; S.D.Fla. Local Rule 1(f) governing Magistrate Judges; S.D. Fla. Admin. Order 2003-19; and, Rules 8 and 10 Governing §2255 Cases in the United States District Courts.

After filing his initial §2255 motion with supporting memorandum (Cv-DE#s1,4) *pro se*, the movant filed an amendment thereto (Cv-DE#11), and requested the appointment of counsel, which was granted. Thereafter, an additional memorandum (Cv-DE#20) and supplemental memoranda (Cv-DE#s21,28) were filed by the movant, the government has filed multiples responses (Cv-DE#s7,14,22) to this court's order to shows cause and briefing schedule; and, the movant has filed replies thereto (Cv-DE#s10,23).[1] In addition to the foregoing, before the Court for review is the Presentence Investigation Report ("PSI"), Statement of Reasons ("SOR"), and all pertinent portions of the underlying criminal file under attack here.[2]

## II. <u>Claims</u>

As can best be discerned, given the multiple filings by the movant herein, it appears that the movant is raising the following grounds for relief:

1.  He was denied effective assistance of counsel, where his lawyer failed to object to the fact that the movant did not qualify for an enhanced sentence

---

[1]To the extent the movant has raised new facts and provided new evidence to the undersigned, for the first time, in his traverse, something which is precluded under federal case law, it has been reviewed and considered herein. However, if the movant again attempts to raise new arguments or grounds for relief or otherwise provides additional evidence "for the first time in an objections to this Report, the district court may [and should] exercise its discretion and decline to consider the argument" or new facts. <u>Daniel v. Chase Bank USA, N.A.</u>, 650 F.Supp.2d 1275, 1278 (N.D. Ga. 2009)(<u>citing Williams v. McNeil</u>, 557 F.3d 1287 (11ᵗʰ Cir. 2009); <u>see also</u>, <u>Starks v. United States</u>, 2010 WL 4192875 at *3 (S.D. Fla. 2010); <u>United States v. Cadieux</u>, 324 F.Supp.2d 168 (D.Me. 2004). "Parties must take before the magistrate, 'not only their best shot but all of the shots.'" <u>Borden v. Sec'y of Health & Human Servs.</u>, 836 F.2d 4, 6 (1ˢᵗ Cir. 1987)(<u>quoting Singh v. Superintending Sch. Comm.</u>, 593 F.Supp. 1315, 1318 (D.Me. 1984)).

[2]The undersigned takes judicial notice of its own records as contained on CM/ECF in those proceedings. <u>See Fed.R.Evid</u>. 201.

under 18 U.S.C. §3559© because he did not have the qualifying predicate offense(s) to support the enhancement (Cv-DE#1:4; Cv-DE#4).

2.   He was denied effective assistance of counsel, where his lawyer failed to request a special jury instruction and corresponding verdict form requiring the jury to determine the amount of drugs the movant actually possessed or distributed. (Cv-DE#1:5; Cv-DE#4:6).

3.   Movant's §924(c) conviction and resultant sentence is no longer lawful in light of the Supreme Court's decision in <u>Johnson v. United States</u>,[3] 576 U.S. ____, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015). (Cv-DE#11:2; Cv-DE#20:2).

4.   After the <u>Johnson</u> decision, movant's sentence enhancement, pursuant to 18 U.S.C. §3559©, is no longer lawful, because his conviction for conspiracy to commit Hobbs Act robbery does not qualify as a serious violent felony and thus cannot support the enhancement. (Cv-DE#11:7; (Cv-DE#20:2; Cv-DE#21).

5.   Movant no longer has the qualifying predicate offenses to support an enhanced sentence as an armed career criminal post-<u>Johnson</u>. (Cv-DE#20:2).

## III.  <u>Procedural History</u>

By way of background, the movant's convictions arose out of an engineered reverse sting operation, during which the movant and his coconspirator, Bobby Jenkins, joined a fake conspiracy to rob a drug dealers' house. <u>United States v. Clarke</u>, 649 Fed.Appx. 837, 840 (11 Cir. 2015). On May 10, 2013, an Indictment was returned

---

[3] As everyone is well-aware, on June 26, 2015, the United States Supreme Court, in <u>Johnson</u>, held that the Armed Career Criminal Act's (ACCA) residual clause was unconstitutionally vague, and that imposing an enhanced sentence pursuant to that clause thus violates the Constitution's guarantee of due process. In <u>Welch v. United States</u>, 578 U.S. __, 136 S.Ct. 1257, 194 L.Ed.2d 387 (2016), the Supreme Court held that <u>Johnson</u> announced a substantive rule that applied retroactively on collateral review.

charging the movant with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. §1951(a)[4] (Count 1); conspiracy to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §841(b)(1)(A)(ii) and §846 (Count 2); felon in possession of a firearm, in violation of 18 U.S.C. §922(g)(1) and §924(e)(1) (Count 4); and, using and carrying a firearm during and in relation to a crime of violence and possession of a firearm in furtherance of a crime of violence, "an offense for which the defendant may be prosecuted in a court of the United States, specifically, a violation of Title 18, United States Code, Section 1951(a), as set forth in Count 1 of this Indictment, in violation of 18, United States Code, Sections 924(c)(1)(A) and 2." (Cr-DE#12:1-3). As will be recalled, Count 1 charged movant with conspiracy to commit Hobbs Act robbery, not a substantive Hobbs Act robbery violation. (Id.).

Prior to trial, the government filed a prior felony information notice, triggering the application of the "three strikes" statute, 18 U.S.C. §3559©. (Cr-DE#28). This statute, in

---

[4]Title 18 U.S.C. §1951(a) provides, in relevant part:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section....

(emphasis added). The Hobbs Act further defines "robbery" as:

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. §1951(b)(1) (emphasis added).

essence, provides that a defendant convicted of three "serious violent felonies," a defined term, faces a mandatory term of life imprisonment. At the time, because of the movant's prior convictions for armed robbery, burglary of a structure, and fleeing and eluding law enforcement, the government believed that, if the movant were convicted of the offenses charged in Counts 1 or 5 of the Indictment, which they claimed were also "serious violent felonies," the movant would receive a mandatory life term of imprisonment. (<u>Id</u>.). After engaging in pretrial motion practice, the movant proceeded to trial, where he was convicted as charged, following a jury verdict. (Cr-DE#80).

A PSI was prepared, which reveals that, pursuant to U.S.S.G. §3D1.2©, Counts 1, 2, and 4 were grouped together because one of the counts embodies conduct that is treated as a specific characteristic to the guideline applicable to another of the counts. (PSI ¶18). Also, Count 5 was excluded from grouping because it carries a minimum mandatory term of imprisonment to run consecutive to any other term of imprisonment imposed. (PSI ¶19). Initially, the offense level was set at 32, based on the fact that the offense involved at least 5 kilograms, but less than 15 kilograms of cocaine. (PSI ¶20). An additional 2-level enhancement was added to the offense level because the movant used violence, made a credible threat to use violence, or directed the use of violence, resulting in an adjusted offense level 34. (PSI ¶21).

However, the PSI reveals that the movant qualified for an enhanced sentence as a **career offender** because he was at least 18 years old at the time of the offenses of conviction, the offenses are either a crime of violence or a controlled substance offense, and movant had at least two prior felony convictions for either a crime of violence or controlled substance offense, relying on **case**

5

**nos. F95-21499 and F12-6583**. (PSI ¶26). Next, because the movant §924© offense of conviction carries a mandatory consecutive term of imprisonment, the guideline range under U.S.S.G. §4B1.1(c)(3) is lower and thus not applicable. (PSI ¶26). The PSI further notes that the movant also qualified for an enhanced sentence as an **armed career criminal**. (PSI ¶26). Pursuant to U.S.S.G. §4B1.4(b)(2), the greatest offense level for an armed career criminal is produced by applying the offense level from U.S.S.G. §4B1.1(career offender). (PSI ¶26). Therefore, the base offense level was set at a level 37, pursuant to U.S.S.G. §4B1.1(a),(b)(1). (PSI ¶26). No adjustments for acceptance of responsibility were given, and the total adjusted offense level remained a level 37. (PSI ¶¶27-28).

Next, the PSI noted that the movant had a total of 16 criminal history points, resulting in a criminal history category VI. (PSI ¶40). Since the criminal history category as a career offender and an armed career criminal is always a category VI, the movant's criminal history category remained unchanged. (PSI ¶40). Based on a total offense level 37 and a criminal history category VI, the movant faced an advisory guideline range of 360 months to a term of life imprisonment as to Counts 1, 2, and 4. (PSI ¶73). Regarding Count 5, the movant faced a term of life imprisonment, to run consecutive to any other term of imprisonment imposed by the court. (Id.). Statutorily, as to Count 1, movant faced a mandatory term of life imprisonment, for violation of 18 U.S.C. §§1951(a) and 3559©. (PSI ¶72). As to Count 2, movant faced a minimum of 10 years and up to a life time term of imprisonment for violation of 21 U.S.C. §841(b)(1)(A). (Id.). He also faced a mandatory minimum of 15 years and up to a term of life imprisonment as to Count 4, for violation of 18 U.S.C. §922(g)(1) and 924(e)(3). (Id.). Finally, as to Count 5, movant faced a mandatory term of life imprisonment, which shall run consecutive to any other term of imprisonment, for violation of

18 U.S.C. §924(c)(1)(A) and §3559(e). (PSI ¶72).

Movant appeared for sentencing on **December 18, 2013.** (Cr-DE#146). At that time, movant confirmed he had the opportunity to review the PSI with defense counsel prior to sentencing. (Id.:3). After the government argued that a lifetime term of imprisonment was warranted in the case, defense counsel advised the court that early on, during plea discussions, they became aware movant was facing a potential life term of imprisonment under the ACCA, and discussed the issue at length with the movant. (Id.:4). Counsel reminded the court that the Eleventh Circuit was only one of a few appellate courts which has held that fleeing a police officer was a qualifying predicate for purposes of the ACCA enhancement. (Id.). Defense counsel further stated that objections had been filed regarding the two predicate offenses, burglary of a business and fleeing a law enforcement officer, recognizing that while the Eleventh Circuit had also previously found these to be qualifying predicate offenses, the state of the law was in flux; and, as such, the movant wanted to preserve the issues. (Id.:5). The court acknowledged that it was, in fact, treating it as "preserved," and would follow binding precedent. (Id.:5). The movant then provided a statement in support of allocution. (Id.:6). Thereafter, the court found, in pertinent part, as follows:

> Your attorney has certainly preserved for you your objections and by his remarks, you are aware that he has some hope that perhaps the Eleventh Circuit will render a decision in the future that would change the outcome here.
>
> There is no such decision now and I am bound to follow the law of the Eleventh Circuit. And under that law, the sentence that I must impose is the sentence that Probation indicated in the presentence report and the one that you have been aware of for some time

now since discussing these issues with your excellent defense attorney, Mr. Kahn.

Your Offense Level is 37, Criminal History Category 6. Based upon those classifications which you do hold and which Mr. Vazquez, the prosecutor, articulated, I am required by law to impose this sentence. And therefore it is the judgment of this Court that you are committed to the Bureau of Prisons to be imprisoned for life. The term consists of life imprisonment as to Counts 1, 2 and 4 to be served concurrently with each other. And life imprisonment as to Count 5 to run consecutively to the terms imposed as to Counts 1, 2, and 4. I find that you are not able to pay a fine, therefore no fine is imposed.

You have a significant criminal history, Mr. Clarke, but let me just say, because I have not addressed at all the factors in 18 U.S.C., 3553, that based upon a careful review of your criminal background and the facts of this case and what I know of you, it is my belief that this sentence is **greater than necessary to achieve the objectives of sentencing.** I would not be honest if I said it otherwise. And that will be in the record, as well. **But I am required by law to give you this sentence and it is the one that I imposed, notwithstanding that if I had the discretion I would not be doing this....**

(Cr-DE#146:7-8); (emphasis added).

Movant prosecuted a direct appeal, raising multiple claims, including that: (1) the court erred by admitting evidence of his 2006 burglary conviction; and, (2) the court erred in its instructions to the jury because it constructively amended the Indictment on Count 5. United States v. Clarke, 860 Fed.Appx. 837 (11 Cir. 2016); (Cr-DE#156). On **May 11, 2016,** the Eleventh Circuit

8

affirmed the movant's judgment in a written, but unpublished decision. United States v. Clarke, 860 Fed.Appx. 837 (11 Cir. 2016); (Cr-DE#156). No certiorari review petition appears to have been filed. Thus, the movant's judgment became final on **Tuesday, August 9, 2016,** when the 90-day period for seeking certiorari review with the U.S. Supreme Court expires following conclusion on direct appeal.[5]

The movant had one year from the time his judgment became final, or no later than **Wednesday, August 9, 2017,[6]** within which to timely file this federal habeas petition. See Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); see also, See Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008)(citing Ferreira v. Sec'y, Dep't of Corr's, 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)(this Court has suggested that the limitations period should be calculated according to the "anniversary method," under which the limitations period expires on the anniversary of the date it began to run); accord United States v. Hurst, 322 F.3d 1256, 1260-61 (10th Cir. 2003); United States v. Marcello, 212 F.3d 1005, 1008-09 (7th Cir. 2000)). Applying the anniversary method to this case means movant's

---

[5]The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, United States v. Kaufman, 282 F.3d 1336 (11th Cir. 2002); Wainwright v. Sec'y Dep't of Corr's, 537 F.3d 1282, 1283 (11th Cir. 2007)(conviction final under AEDPA the day U.S. Supreme Court denies certiorari, and thus limitations period begins running the next day). Once a judgment is entered by a United States court of appeals, a petition for writ of certiorari must be filed within 90 days of the date of entry. The 90 day time period runs from the date of entry of the judgment rather than the issuance of a mandate. Sup.Ct.R. 13; see also, Close v. United States, 336 F.3d 1283 (11th Cir. 2003).

[6]See Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008)(citing Ferreira v. Sec'y, Dep't of Corr's, 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)(this Court has suggested that the limitations period should be calculated according to the "anniversary method," under which the limitations period expires on the anniversary of the date it began to run); accord United States v. Hurst, 322 F.3d 1256, 1260-61 (10th Cir. 2003); United States v. Marcello, 212 F.3d 1005, 1008-09 (7th Cir. 2000)); see also, 28 U.S.C. §2255.

collateral attack to the convictions and sentences expired on **August 9, 2017.**

Well before his conviction even became final, the movant came to this court, filing his initial motion to vacate with supporting memorandum on **January 27, 2016,** after he signed and handed his motion to prison authorities for mailing, in accordance with the mailbox rule, as evidenced by the prison facility stamp, raising claims 1 and 2, as listed above.[7] (<u>See</u> Cv-DE#s1,4). Also within the one-year federal limitations period, the movant next filed an amendment (Cv-DE#11) on **May 26, 2016,** in accordance with the mailbox rule, as evidenced by the prison facility stamp. (Cv-DE#11:8).

Because the Supreme Court's decision in <u>Johnson</u>, <u>supra</u>., issued on **June 26, 2015,** was made retroactively applicable to cases on first collateral review by <u>Welch</u>, <u>supra</u> on **April 18, 2016,** an order was entered appointing counsel and setting a briefing schedule to address the lawfulness of movant's convictions and sentences post-<u>Johnson</u>. (Cv-DE#17). In compliance with the court's order, defense counsel filed a memorandum of law and supplemental memorandum addressing the <u>Johnson</u> issue. (Cv-DE#20,21). The government also filed responses to this court's show cause order and the order setting briefing schedule. (Cv-DE#s7,14,22).

---

[7]"Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." <u>Williams v. McNeil</u>, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009); <u>see</u> <u>Fed.R.App.</u> 4(c)(1)("If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing."). Unless there is evidence to the contrary, like prison logs or other records, a prisoner's motion is deemed delivered to prison authorities on the day he signed it. <u>See</u> <u>Washington v. United States</u>, 243 F.3d 1299, 1301 (11th Cir. 2001); <u>Adams v. United States</u>, 173 F.3d 1339 (11th Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

## IV. <u>Facts Adduced at Trial</u>

Briefly, a succinct, detailed recitation of the facts, as set forth by the Eleventh Circuit in its published opinion, reveals that:

> ...The detective who engineered the reverse sting which led to the indictment was Kenneth Veloz, who had experience with these sorts of "proactive investigations" of "individuals that are interested in committing [armed] robbery." In this type of case, Detective Veloz typically proposed "an extremely violent scenario" to give the targets the "chance ... to walk away if they [were] not interested in committing [a] robbery." Here, Detective Veloz first became interested in Jenkins when a confidential informant (CI) told him that Jenkins "may be interested in committing a robbery."
>
> After a series of phone calls in which Detective Veloz thought Jenkins seemed to be interested in participating in the robbery, Detective Veloz set up three in-person meetings in which he posed as a drug trafficker. In the first, Detective Veloz represented that he routinely picked up and delivered kilogram quantities of cocaine for a group of drug traffickers, and that they had failed to adequately pay him for work he had done. He told Jenkins he needed someone to help him rob the traffickers. He said that they were violent drug dealers who would kill Detective Veloz and his family if they found out that he stole the cocaine. Jenkins responded that he and his "people" could handle the job, saying they were "certified." He also asked questions about the job, like what the dealers were "capable of, what area they [worked] in, ... what people [ ] they know," and whether they "hav[e] guns in there." Jenkins also said that he had "AR-15s that come from the army," and that he would wear a bulletproof vest.

11

Jenkins brought Clarke—an acquaintance—to the second meeting, and he, Clarke, Detective Veloz, and the CI continued to discuss the plan to rob the drug traffickers. Detective Veloz emphasized that these were dangerous people who "don't play" and stated that, personally, when it came to guns, "I'm running the other way." Still Jenkins persisted in asking questions, including the location of the house, who the "head" of the traffickers was, and whether there would be cash in the house along with the drugs. Clarke noted that if there were only two drug dealers in the house when they robbed them, "it shouldn't really be [an] issue as far as getting in and getting out." Both Jenkins and Clarke asked Detective Veloz if he wanted the traffickers dead, and Veloz responded "you could do what you got to do." Clarke suggested that he would need to kill them so that no one would know Detective Veloz was associated with them. And Clarke said he would need to "hit" Detective Veloz to make it look like Detective Veloz was not involved. In a follow-up phone call between the CI and Jenkins, Jenkins told the CI that he wanted the robbery "to get bloody regardless" because then the traffickers "can't talk."

At the third and final meeting, the same group discussed details of the robbery. Clarke repeatedly insisted that they be told the location in advance so they could plan their entry. Detective Veloz also told them there would be ten to fifteen kilograms of cocaine, and he and Clarke discussed splitting the drugs "fifty/fifty." Clarke noted that when he "move[s] [his] trigger, [he is] on precision," and that Detective Veloz should "get out of the way" if shooting begins. In a phone call the day before the robbery, Jenkins told the CI that everything was "good," but expressed concern that Detective Veloz might be involved with the police. The CI assured him that "everything [was] straight."

On the day of the robbery, the government provided a car to the CI, who picked up

> Jenkins and Clarke and drove them to the
> robbery location. When they arrived, a team of
> ATF Detectives converged on the car. Jenkins
> had a .40 caliber Sig Sauer handgun and was
> wearing gloves. Clarke dropped his loaded
> semiautomatic assault rifle in the back seat.

See United States v. Clarke, 649 Fed. Appx. 837, 840-41 (11th Cir. 2016); (Cr-DE#156).

## V. **Threshold Issues**

### A. **Timeliness**

Given the foregoing procedural history, it appears that the challenges to the movant's convictions and sentences were timely instituted within a year from the time his conviction became final or within a year of the Supreme Court's Johnson decision. Further, the issue need not be explored further herein as the government has waived the state of limitations defense (See Cv-DE#s7,14,22) from consideration by this court under United States v. Frady, 456 U.S. 152, 162, 167-68, 102 S.Ct. 1584, 1594, 1599-1600, 7 L.Ed.2d 816 (1982). See Wood v. Milyard, 566 U.S. 463, 470 n.5, 472, 132 S.Ct. 1826, 1833, 1835, 182 L.Ed.2d 733 (2012). In Wood, the Supreme Court held that a district court abuses its discretion by considering a statute of limitation defense that has been affirmatively waived, as opposed to merely forfeited. (Id.). See also In Re Jackson, 826 F.3d 1343, 1347 (11 Cir. 2016)(citing Day v. McDonough, 547 U.S. 198, 210, 126 S.Ct. 1675, 1684, 164 L.Ed.2d 376 (2006) and Wood v. Milyard, 546 U.S. 463, 132 S.Ct. 1826, 182 L.Ed.2d 733 (2012)); Rogers v. United States, 569 Fed. Appx. 819, 821 (11th Cir. 2014)(Determining government's miscalculation was not related to the timeliness of the motion, but rather an intelligent waiver of the statute of limitations defense,

citing <u>Day v. McDonough</u>, 547 U.S. at 202 and <u>Gay v. United States</u>, 816 F.2d 614, 616 n. 1 (11th Cir.1987)("[T]he principles developed in habeas cases also apply to §2255 motions.")).

## B. <u>Procedural Bar</u>

The government, however, argues incorrectly that any <u>Johnson</u>-based claims are procedurally defaulted from review here because they were not raised at sentencing or on direct appeal. (Cv-DE#7:22:2-4). The government does not dispute, however, and the record confirms that the movant did, in fact, lodge objections to the movant's classification as an armed career criminal, thereby preserving the issue, even though counsel recognized at the time that the Eleventh Circuit had upheld the enhancement based on prior convictions for fleeing a law enforcement officer and burglary of a structure.[8] (Cr-DE#103). The issue, however, was not raised on direct appeal, but movant asserts here as cause that counsel was ineffective for failing to do so; and, further argues "actual innocence" to excuse the bar. (Cv-DE#22:2).

A defendant, in federal custody, may utilize 28 U.S.C. §2255 to vacate, set aside, or correct a sentence imposed under the ACCA. <u>Spencer v. United States</u>, 773 F.3d 1132, 1143 (11 Cir. 2014)(<i>en banc</i>)("We can collaterally review a misapplication of the [ACCA] because, unlike an advisory guideline error, that misapplication results in a sentence that exceeds the statutory maximum."). Although an ACCA claim is cognizable in a §2255 motion, as a

---

[8] <u>See</u> <u>United States v. Ortiz</u>, 536 Fed.Appx. 893 (11 Cir. 2013)(finding using vehicle to flee or elude law enforcement is categorically a crime of violence for purposes of the ACCA, <u>citing</u> <u>United States v. Petite</u>, 703 F.3d 1290, 1292 (11 Cir. 2013); <u>United States v. Bush</u>, 437 Fed.Appx. 820 (11 Cir. 2011)(finding burglary of an unoccupied structure is a crime of violence for purposes of the ACCA); <u>United States v. Wheeler</u>, 434 Fed.Appx. 831 (11 Cir. 2011)(same).

general matter, a criminal defendant must assert an available challenge to a conviction or sentence on direct appeal or be barred from raising the challenge in a section 2255 proceeding. Massaro v. United States, 538 U.S. 500, 504 (2003); see also Greene v. United States, 880 F.2d 1299, 1305 (11th Cir. 1989). In other words, under the procedural default rule, all claims, including constitutional ones, not raised on direct appeal, "may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. at 504; Murray v. Carrier, 477 U.S. 478, 485-86, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986) (citations omitted); Spencer v. Sec'y, Dep't of Corr., 609 F.3d 1170, 1179-80 (11th Cir. 2010); Lynn v. United States, 365 F.3d 1225, 1232-34 (11th Cir. 2004).

There are, however, two exceptions to the procedural default rule, (1) cause and prejudice, and (2) a "miscarriage of justice, or actual innocence." See McKay v. United States, 657 F.3d 1990, 1996 (11 Cir. 2011). To meet the requirements for the first exception, the movant must demonstrate "cause for not raising the claim of error on direct appeal *and* actual prejudice form the alleged error." McKay v. United States, 657 F.3d at 1996 (emphasis in original). Under the second, actual innocence-miscarriage of justice exception, the "movant's procedural default is excused if he can show that he is actually innocent either of the crime of conviction or, in the capital sentencing context, of the sentence itself." Id. "This exception is exceedingly narrow in scope as it concerns a petitioner's 'actual' innocence rather than his 'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11 Cir. 2001). Regarding the cause and prejudice analysis, "the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all." Lynn v. United States, 365 F.3d 1225, 1235

(11 Cir. 2004).

## 1. Exception (1)-Cause and Prejudice

### a. Cause

The Supreme Court has held that a petitioner can show cause for failing to raise an issue when "some objective factor external to the defensen prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [his] own conduct." Weinacker v. United States, 2017 WL 5665450, at *3 (11 Cir. June 16, 2017); See Murray v. Carrier, 477 U.S. 478, 488 (1986); Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999); accord Lynn v. United States, 365 F.3d at 1235. The Supreme Court has further held that cause for not raising a claim can be shown when a claim "is so novel that its legal basis was not reasonably available to counsel." Bousley v. United States, 523 U.S. 614, 622 (1998); see also, Reed v. Ross, 468 U.S. 1, 16 (1984).

A meritorious claim of ineffective assistance of counsel, as alleged herein, can also constitute cause. See United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000). Ineffective assistance of counsel claims, however, are generally not cognizable on direct appeal and are properly raised by way of a §2255 motion regardless of whether they could have been brought on direct appeal. Massaro v. United States, 538 U.S. 500, 503, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); see also United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010).

Further, movant clearly faults counsel for failing to pursue the issue on direct appeal. The Eleventh Circuit has now made clear

16

that "where there is an intervening decision of the Supreme Court on an issue that overrules either a decision of that Court" or where it overrules a published decision of the Eleventh Circuit "that was on the books when the appellant's opening brief was filed, and that provides the appellant with a new claim or theory, the appellant will be allowed to raise that new claim or theory in a supplemental or substitute brief provided that he files a motion to do so in a timely fashion after ... the new decision is issued." See United States v. Durham,[9] 795 F.3d 1329, 1331 (11th Cir. 2015). Consequently, movant has clearly demonstrated cause to overcome the procedural default.

### b.   **Prejudice**

To show prejudice, a petitioner must demonstrate actual prejudice resulting from the alleged constitutional violation. United States v. Frady, 456 U.S. 152, 168, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); Wainwright v. Sykes, 433 U.S. 72, 84, 97 S. Ct. 2497, 2505, 53 L. Ed. 2d 594 (1977). As will be recalled, the movant's statutory minimum as to Count 4 was increased as a result of the ACCA enhancement to a term of 15 years and up to life imprisonment. (PSI ¶¶26,72). Moreover, his status as an armed career criminal under the guidelines resulted in an increase to the movant's initial base offense level from a level 34 to a level 37, although it had no effect on his criminal history category which remained unchanged at a criminal history category VI. (PSI

---

[9]The Durham opinion was issued in August 2015, just two months after the movant's Eleventh Circuit decision on direct appeal issued. However, it is clear that appellate counsel could have sought rehearing and/or rehearing *en banc* or leave to file supplemental briefing since Johnson was issued prior to the Eleventh Circuit's decision in his case. Therefore, the movant has effectively demonstrated cause to overcome the procedural default. It thus remains to be determined if he can satisfied the prejudice prong, which will require review to ascertain whether he, in fact, has the requisite prior convictions to support the ACCA enhancement.

¶¶20,25,26,40). Without the ACCA enhancement, the movant's advisory guideline range, based on a total adjusted offense level 34, with a criminal history category VI, would have  resulted in a term of 262 to 327 months imprisonment. Statutorily, a violation of 18 U.S.C. §922(g), as charged in Count 4, without the ACCA enhancement, calls for a term of 10 years imprisonment, but with the ACCA enhancement, it was increased, pursuant to 18 U.S.C. §924(e) to 15 years imprisonment. Therefore, if movant does not have the three prior qualifying predicate offenses, then prejudice has been established.

The government argues, however, concedes that the armed career criminal designation is no longer valid, but claims the conviction as to Count 4 should remain valid, suggesting that no resentencing is required because the movant's mandatory life sentences under §3559© remain lawful; and, therefore there is no "practical sentencing consequence," because the movant is still serving life sentences on his remaining convictions. (Cv-DE#14).

### c.  Analysis

As applied here, the movant has filed this §2255 proceeding, based in part on the new, retroactively applicable rule announced in Johnson, claiming that the residual clause of the ACCA is unconstitutional. Movant does not allege new evidence, nor the existence of an error that would render his sentence unlawful, but rather argues that, but for Johnson, he would not be entitled to relief from his ACCA enhancement.

Consequently, where the Supreme Court explicitly overrules well-settled precedent and gives retroactive application to that new rule after a litigant's direct appeal, "[b]y definition" a

claim based on that new rule cannot be said to have been reasonably available to counsel at the time of the direct appeal. Reed v. Ross, 468 U.S. 1, 17 (1984). That is precisely the circumstance here. Regardless, the Eleventh Circuit has made clear that the new rule could have been raised in a supplemental briefing. See United States v. Durham, 795 F.3d 1329, 1331 (11th Cir. 2015). The Supreme Court in Johnson overruled precedent, announced a new rule, and then gave retroactive application to that new rule. Under the totality of the circumstances present here, the movant's claim fits squarely within §2255 and §2244(b)(4), and is thus not procedurally barred from review.

### 2. Exception (2)-Fundamental Miscarriage of Justice

If, however, the movant fails to meet the exceptions to the procedural default rule, because he cannot show cause and prejudice, another avenue may exist for obtaining review of the merits of a procedurally defaulted claim. Under exceptional circumstances, a prisoner may obtain federal habeas review of a procedurally defaulted claim if such review is necessary to correct a fundamental miscarriage of justice, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 495-96; see also Herrera v. Collins, 506 U.S. 390, 404, 113 S. Ct. 853, 862, 122 L. Ed. 2d 203 (1993); Kuhlmann v. Wilson, 477 U.S. 436, 106 S. Ct. 2616, 91 L. Ed. 2d 364 (1986). The actual innocence exception is "exceedingly narrow in scope" and requires proof of actual innocence, not just legal innocence. Id. at 496; see also Bousley, 523 U.S. at 623 ("'actual innocence' means factual innocence, not mere legal insufficiency"); Sawyer v. Whitley, 505 U.S. 333, 339 (1992)("the miscarriage of justice exception is concerned with actual as compared to legal innocence"). No such showing has been

19

made here.

Nevertheless, when judicial economy dictates, where the merits of the claim may be reached and readily disposed of, judicial economy has dictated reaching the merits of the claim while acknowledging the procedural default and bar in the alternative.[10] See Lambrix v. Singletary, 520 U.S. 518 (1997). See also Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir. 1999)(stating that judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner and the procedural bar issues are complicated), cert. denied, 528 U.S. 846 (1999); Chambers v. Bowersox, 157 F.3d 560, 564 n. 4 (8th Cir. 1998)(stating that "[t]he simplest way to decide a case is often the best.").

## VI. **General Legal Principles**

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments, pursuant to §2255, are extremely limited. A prisoner is entitled to relief under §2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. See 28 U.S.C. §2255(a); McKay v. United States, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. §2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of

---

[10]Even if a claim is technically unexhausted here, the Court has exercised the discretion now afforded by Section 2255, as amended by the AEDPA, which permits a federal court to deny on the merits a habeas corpus application containing unexhausted claims. See Johnson v. Scully, 967 F.Supp. 113 (S.D.N.Y. 1996); Walker v. Miller, 959 F.Supp. 638 (S.D. N.Y. 1997); Duarte v. Miller, 947 F.Supp. 146 (D.N.J. 1996).

justice.'" <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004)(citations omitted). The "fundamental miscarriage of justice" exception recognized in <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent ...."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. <u>Rozier v. United States</u>, 701 F.3d 681, 684 (11th Cir. 2012); <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1343 (11th Cir. 2000); <u>Mills v. United States</u>, 36 F.3d 1052, 1056 (11th Cir. 1994); <u>United States v. Rowan</u>, 663 F.2d 1034, 1035 (11th Cir. 1981). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. <u>Nyhuis</u>, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. <u>Sanders v. United States</u>, 373 U.S. 1, 16, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) ("identical grounds may often be proved by different factual allegations ... or supported by different legal arguments ... or couched in different language ... or vary in immaterial respects").

The movant raises multiple claims challenging counsel's effectiveness during all stages of the proceeding. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. <u>Strickland v. Washington</u>, 466 U.S. 668, 684-85, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When assessing counsel's performance under <u>Strickland</u>, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional

judgment." Id. at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance ...." Burt v. Titlow, ___ U.S. ___, 134 S.Ct. 10, 18, 187 L.Ed.2d 348 (2013). To prevail on a claim of ineffective assistance of counsel, the movant must demonstrate (1) that his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) that he suffered prejudice as a result of that deficient performance. Strickland, 466 U.S. at 687-88.

To establish deficient performance, the movant must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. Strickland, supra. See also Cummings v. Sec'y for Dep't of Corr's, 588 F.3d 1331, 1356 (11th Cir. 2009)("To establish deficient performance, a defendant must show that his counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms at the time the representation took place.")(internal quotation marks omitted). The Court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(en banc), cert. den'd, 531 U.S. 1204 (2001)(quoting Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987)). There are no absolute rules dictating what is reasonable performance because absolute rules would restrict the wide latitude counsel have in making tactical decisions. Id. at 1317. The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Chandler, 218 F.3d at 1313. Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Id. at 1313

n.12.

Regarding the prejudice component, the Supreme Court has explained "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. Strickland, 466 U.S. at 689. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. A court need not address both prongs of Strickland if the defendant makes an insufficient showing on one of the prongs. Stickland, 466 U.S. at 697. See also Brown v. United States, 720 F.3d 1316, 1326 (11 Cir. 2013); Butcher v. United States, 368 F.3d 1290, 1293 (11 Cir. 2004). Further, counsel is not ineffective for failing to raise non-meritorious issues. Chandler v. Moore, 240 F.3d 907, 917 (11 Cir. 2001). Moreover, counsel is not required to present every non-frivolous argument. Dell v. United States, 710 F.3d 1267, 1282 (11 Cir. 2013).

A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Id. at 690-91. To uphold a lawyer's strategy, the Court need not attempt to divine the lawyer's mental processes underlying the strategy. "There are countless ways to provide effective assistance in any given case." Strickland, 466 U.S. at 689. No lawyer can be expected to have considered all of the ways. Chandler, 218 F.3d at 1316.

23

Since the sentence ultimately imposed upon the defendant is a
"result of the proceeding," in order for a petitioner to satisfy
the prejudice-prong of Strickland, he must demonstrate that there
is a reasonable probability that his sentence would have been
different but for his trial counsel's errors. See United States v.
Boone, 62 F.3d 323, 327 (10th Cir.)(rejecting the defendant's claim
that counsel was ineffective in part because the defendant failed
to show "that the resulting sentence would have been different than
that imposed under the Sentencing Guidelines"), cert. denied, 516
U.S. 1014 (1995). Thus, the Strickland test applies to claims
involving ineffective assistance of counsel during the punishment
phase of a non-capital case. See Glover v. United States, 531 U.S.
198 (2001)(holding "that if an increased prison term did flow from
an error [of counsel] the petitioner has established Strickland
prejudice"); Spriggs v. Collins, 993 F.2d 85, 88 (5th Cir. 1993).
If the petitioner cannot meet one of Strickland's prongs, the court
does not need to address the other prong. Strickland, 466 U.S. at
687, 104 S.Ct. at 2064. See also Butcher v. United States, 368 F.3d
1290, 1293 (11th Cir. 2004).

Furthermore, a §2255 movant must provide factual support for
his contentions regarding counsel's performance. Smith v. White,
815 F.2d 1401, 1406–07 (11th Cir.1987). Bare, conclusory allegations
of ineffective assistance are insufficient to satisfy the
Strickland test. See Boyd v. Comm'r, Ala. Dep't of Corr's, 697 F.3d
1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456
Fed.Appx. 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985
F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d
996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559
(11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir.
1990)(citing Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621,
52 L.Ed.2d 136 (1977)); United States v. Ross, 147 Fed.Appx. 936,

24

939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. <u>Williamson v. Moore</u>, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" <u>Dingle</u>, 480 F.3d at 1099 (<u>quoting</u> <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but was counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." <u>United States v. Morrow</u>, 977 F.2d 222, 229 (6th Cir. 1992).

### VII. <u>Burden of Proof Re Johnson Claim</u>

The Eleventh Circuit has now settled the issue regarding the burden of proving a <u>Johnson</u> claim in <u>Beeman v. United States</u>, 871 F.3d 1215 (11 Cir. 2017). There, the Eleventh Circuit made clear that the movant, not the government, "bears the burden to prove the claims in his §2255 motion." <u>Beeman v. United States</u>, 871 F.3d at 1222 (<u>citing</u> <u>Rivers v. United States</u>, 777 F.3d 1306, 1316 (11 Cir. 2015); <u>LeCroy v. United States</u>, 739 F.3d 1297, 1321 (11 Cir. 2014); <u>Barnes v. United States</u>, 579 F.2d 364, 366 (5 Cir. 1978)("Under Section 2255, [the movant] had the burden of showing that he was entitled to relief."); <u>Coon v. United States</u>, 441 F.2d 279, 280 (5 Cir. 1971)("A movant in a collateral attack upon a judgment has the burden to allege and prove facts which would entitle him to relief.")). In that regard, the Eleventh Circuit held:

25

> To prove a <u>Johnson</u> claim, the movant must show that--more likely than not--it was use of the residual clause that led to the sentencing court's enhancement of his sentence. If it is just as likely that the sentencing court relied on the elements or enumerated offenses clause, solely or as an alternative basis for the enhancement, then the movant has failed to show that his enhancement was due to use of the residual clause.

<u>Beeman v. United States</u>, 871 F.3d 1215, 1221-1222 (11 Cir. 2017).

In so ruling, the Eleventh Circuit recognized that "[O]ne of the principal functions of [the] AEDPA was to ensure a greater degree of finality for convictions." <u>Beeman v. United States</u>, 871 F.3d at 1223 (citations omitted). The court recognized that "[P]utting the burden of proof and persuasion on the Government in a §2255 proceeding to show the absence of a constitutional violation or that an error had no effect on the judgment would undermine the presumption of finality that attaches at the end of the direct appeal process," and "would go a long way toward creating a presumption of non-finality and undermine the important interests that finality protects." <u>Beeman v. United States</u>, 871 F.3d at 1223.

The Eleventh Circuit also made clear in <u>Beeman</u> that:

> [A] <u>Johnson</u> claim and a <u>Descamps</u> claim make two very different assertions. A <u>Johnson</u> claim contends that the defendant was sentenced as an armed career criminal under the residual clause, while a <u>Descamps</u> claim asserts that the defendant was incorrectly sentenced as an armed career criminal under the elements or enumerated offenses clause.

<u>See</u> <u>Beeman v. United States</u>, 871 F.3d at 1220. In <u>Beeman</u>, the

26

movant's arguments "focused" or raised a <u>Descamps</u>[11] claim, maintaining that his Georgia conviction for aggravated assault could no longer qualify as an aggravated felony under the element clause. <u>Id</u>. However, the movant also raised, what "sounds like a <u>Johnson</u> claim," arguing that the sentencing court erred in relying on the residual clause to determine that his aggravated assault conviction in Georgia qualified as a crime of violence under the ACCA. The defendant supported his argument, stating that aggravated assault in Georgia had historically qualified as an ACCA predicate under that statute's residual clause." <u>Id</u>.

### VIII.  <u>Applicable Supreme Court Decisions Re Sentencing & the Categorical Approach to Residual Clauses Cases</u>

In order to address the merits of the movant's claims, a brief discussion of <u>Johnson</u> and <u>Dimaya</u>, and its applicability to the movant's enhancements under §3559©, §924(e), and §924©, together with the categorical approach to review of the types of claims follows. To determine whether an offense is a crime of violence, courts employ what has come to be known as the "categorical approach," especially where it involves residual clause cases. <u>See Sessions v. DiMaya</u>, ___ U.S. ___, 138 S.Ct. 1204, 1216 (2018); <u>Taylor v. United States</u>, 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); <u>see also</u>, <u>Mathis v. United States</u>, ___ U.S. ___, 136 S.Ct. 2243, 2248-49, 195 L.Ed.2d 604 (2016)(outlining the categorical approach); <u>Descamps v. United States</u>, 570 U.S. 254, 257, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013)(same).

---

[11]<u>Descamps v. United States</u>, 570 U.S. 254, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013). In <u>Descamps</u>, the Supreme Court described "how federal courts should determine whether an offense qualifies as a predicate offender under the ACCA's enumerated offenses and elements clauses." <u>Beeman v. United States</u>, 871 F.2d at 1218)(<u>citing</u> <u>Mathis v. United States</u>, 579 U.S. ___, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016); <u>Descamps</u>, 527, U.S. 2254, 133 S.Ct. 2276; <u>Shepard v. Untied States</u>, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005); <u>Taylor v. United States</u>, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)).

The Eleventh Circuit has also made clear that the categorical approach is applicable to determine whether a predicate crime was a "crime of violence" under either §924(c)(3)(A) or §924(c)(3)(B). See United States v. McGuire, 706 F.3d 1333, 1336-1337 (11 Cir. 2013) (holding that §924(c)(3)(A) and §924(c)(3)(B) requires a categorical approach to determine whether defendant's underlying crime constitutes a "crime of violence."). Under the categorical approach, courts identify "the minimum criminal conduct necessary for conviction under a particular statute. McGuire, cite. In do so, courts "'look only to the statutory definitions'–*i.e.,* the elements–of [the] ... offense[], and *not* 'to the particular [underlying] facts.'" Descamps, 570 U.S. at 261, 133 S.Ct. 2276 (quoting Taylor, 495 U.S. at 600, 110 S.Ct. at 2143). As relevant here, one of the issues this court will be required to consider is when applying the categorical approach, the minimum conduct necessary for a conviction of the predicate offense (in this case, a conspiracy to commit Hobbs Act robbery), the conduct amounts to a crime of violence under §924(c)(3)(A).

Critically, the Supreme Court has emphasized in employing the categorical approach that, to show a predicate conviction is not a crime of violence "requires more than the application of legal imagination to [the]...statute's language." Gonzalez v. Duenas-Alvarez, 549 U.S. 183, 193, 127 S.Ct. 815, 166 L.Ed2d 683 (2007). Rather, there must be "a realistic probability, not a theoretical possibility," that the statute at issue could be applied to conduct that does not constitute a crime of violence. Id. To show a particular reading of the statute is realistic, a defendant "must at least point to his own case or other cases in which the...courts in fact did apply the statute in the...manner for which he argues." Id. To that end, the categorical approach must be grounded in reality, logic, and precedent, not flights of fancy. See Moncrieffe

v. Holder, 569 U.S. 184, 190-91, 133 S.Ct. 1678, 185 L.Ed.2d 727 (2013)(noting that "focus on the minimum conduct criminalized by the [relevant] statute is not an invitation to apply 'legal imagination' to the...offense") (quoting Duenas-Alvarez, 549 U.S. at 193, 127 S.Ct. 815).

## A.  **The Johnson Decision**

On June 26, 2015, the Supreme Court issued its decision in Johnson v. United States, 576 U.S. \_\_\_\_, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015).[12] In Johnson, the Supreme Court held that the **"residual clause"** of the Armed Career Criminal Act (ACCA), 18 U.S.C. §924(e)(2)(B), was unconstitutionally vague, and that imposing an enhanced sentence, pursuant to that ,clause violates the Constitution's Due Process Clause. See Johnson v. United States, 576 U.S. at \_\_\_\_, 135 S.Ct. at 2558, 2563. (emphasis added). The Supreme Court in Welch v. United States, \_\_\_ U.S. \_\_\_, 136 S.Ct. 1257 (2016), then made Johnson retroactively applicable to cases on collateral review as a new constitutional rule.

The ACCA, 18 U.S.C. §924(e), applies an enhanced sentence to a felon in possession of a firearm, if the felon has three prior convictions for a qualifying drug offense or qualifying violent felony offense. Under the ACCA, Congress defined "violent felony" as any crime punishable by a term of imprisonment exceeding one year that:

(i)   has as an element the use, attempted use, or threatened use of physical force against the person of another; or

---

[12] In Welch v. United States, 578 U.S. \_\_, 136 S.Ct. 1257, 194 L.Ed.2d 387 (2016), the Supreme Court held that Johnson announced a substantive rule that applied retroactively on collateral review.

> (ii) is burglary, arson, or extortion, involves the use
> of explosives, *or otherwise involves conduct that
> presents a serious potential risk of physical injury to
> another*.

18 U.S.C. §924(e)(2)(B)(emphasis added). The italicized portion of §924(e) above was found to be unconstitutionally vague because the residual clause left uncertainty about the degree of risk necessary for a crime to qualify as a violent felony, requiring judges to apply the "serious potential risk" standard to an imagined "ordinary case." <u>Johnson v. United States</u>, ___ U.S. at ____, 135 S.Ct. at 2558.

The <u>Johnson</u> court, however, limited its holding, emphasizing that it had no effect on the first prong of §924(e)(2)(B)(i), known as the **"elements clause,"** and **did not call into question the enumerated crimes listed in subsection (ii)**. <u>Id</u>. at 2563 (emphasis added). The Supreme Court commented in <u>Johnson</u> that, "it does not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk,'" but noted that "[T]he residual clause, however, requires application of the 'serious potential risk' standard to an idealized ordinary case of the crime." <u>Id</u>. <u>Johnson v. United</u> States, ___ U.S. at ____, 135 S.Ct. at 2551-63.

## B. <u>Dimaya Decision</u>

More recently, the Supreme Court in <u>Sessions v. DiMaya</u>, ___ U.S. ____, 138 S.Ct. 1204, 200 L.Ed.2d 549 (2018), considered the constitutionality of the definition of "crime of violence," under 18 U.S.C. §16(b), as incorporated into the Immigration and Nationality Act ("INA"), 8 U.S.C. §1101(a)(43)(F). Title 18 U.S.C. §16(b) defines "crime of violence" as "any other offense that is a

felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." The DiMaya court found the language in §924(e)(2)(B)(ii) to be virtually identical to §16(b), which have come to be known as the statutes' "residual clause." Dimaya, __ U.S. at ___, 138 S.Ct. 1207.

In its discussion, the Supreme Court explained that the "void for vagueness doctrine" guarantees that "ordinary people have 'fair notice' of the conduct a statute proscribes." DiMaya, ___ U.S. at ___, 138 S.Ct. at 1212 (quoting Papachristou v. Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972)). Thus, the DiMaya Court found §16(b)'s residual clause "has the same two features as the ACCA's, combined in the same constitutionally problematic way," creating "great uncertainty about how to estimate the risk posed by a crime," because it "tie[d] judicial assessment of risk to a hypothesis about the crimes 'ordinary case.'" DiMaya, __ U.S. at ___, 138 S.Ct. at 1213 (quoting Johnson v. United States, ___ U.S. at ___, 135 S.Ct. at 2557). In other words, the Johnson residual clause "offer[ed] no reliability" to discern what the ordinary version of any offense looked like. DiMaya, ___ U.S. at ____, 138 S.Ct. at 1214 (citing Johnson v. United States, ___ U.S. at ___, 135 S.Ct. 2557). Discussing the Johnson decision, the DiMaya Court further explained that "the ACCA's residual clause left unclear what threshold level of risk made any given crime a "violent felony." See Ibid. Thus, DiMaya found §16(b)'s definition of a "crime of violence" void for vagueness because it too produced "more unpredictability and arbitrariness than the Due Process Clause tolerates." DiMaya, ___ U.S. at ___, 138 S.Ct. at 1215 (quoting Johnson, ___ U.S. at ___, 135 S.Ct. at 2558.

## IX.  Discussion

31

## A. <u>Challenge to the §922(g) Conviction</u>

The movant argues that his enhanced sentence as an armed career criminal is unlawful because he does not have the qualifying predicate offenses to support the enhancement. (Cv-DE#s,1,4). At the time, the *pro se* movant argued that his prior felony convictions, entered in Miami-Dade County Circuit Court, Case No. F12-6583, for fleeing and eluding a law enforcement officer, and in Case No. F5-21499, for armed robbery, do not constitute "crimes of violence," post-<u>Johnson</u>. (Cv-DE#4). As a result, the movant maintains his conviction as to Count 4, for felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §922(g)(1) and 18 U.S.C. §924(e)(1) is no longer valid. (<u>Id</u>.).

In its response, the government concedes, without much detailed explanation, that movant's enhanced sentence as an armed career criminal, as set forth in the PSI, is no longer valid. (Cv-DE#14:5,7). In its concession, the government explicitly states that the movant's prior burglary convictions, are not "crimes of violence," and thus cannot support his enhanced §924(e) sentence, as charged in Count 4 of the Indictment, in violation of §924(g) and §924(e), under the ACCA's elements or enumerated clauses, post-<u>Mathis v. United States</u>, ___ U.S. ___, ___, 136 S.Ct. 2243, 2251 (2016).

Briefly, as will be recalled, under the law of the circuit in existence when the movant was sentenced, a felony conviction for using a vehicle to flee or elude a law enforcement official, in violation of Florida law, qualified as a "violent felony" under the ACCA's residual clause. <u>See</u> <u>United States v. Petite</u>, 703 F.3d 1290, 1301 (11th Cir. 2013). However, the Supreme Court has since struck

down the residual clause of the ACCA as unconstitutionally vague. Johnson, ___ U.S. at ____, 135 S.Ct. at 2557-2558.

Under the ACCA, a defendant found guilty of possession of a firearm or ammunition, pursuant to 18 U.S.C. §922(g),[13] is subject to an enhanced sentence, requiring a mandatory minimum fifteen years imprisonment if the defendant has three or more prior convictions for a "violent felony" and/or a "serious drug offense" which were "committed on occasions different from one another." 18 U.S.C. §924(e)(1). Under §924(e)(2)(B), "violent felony" means:

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another [the "elements clause"]; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives [the "enumerated offenses clause"], or otherwise involves conduct that presents a serious potential risk of physical injury to another [the "residual clause"]....

18 U.S.C. §924(e)(2)(B) (alterations added).

The Supreme Court held in Johnson, the residual clause of §924(e)(2)(B)(ii) is unconstitutionally vague. Johnson v. United States, ___ U.S. at ____, ____, 135 S. Ct. at 2557-58, 2563. The Supreme Court was nonetheless clear that it did not call into

---

[13] Under 18 U.S.C. §922(g)(1), it is unlawful for any person who has previously been convicted of a crime, punishable by a term of imprisonment exceeding one year, to possess or receive a firearm or ammunition which has been shipped or transported in interstate commerce.

question the application of the elements clause or the enumerated
crimes of the ACCA's definition of a violent felony. Id.

Also, post-Johnson, the Eleventh Circuit has made clear that
Florida's fleeing and eluding statute, no longer qualifies as a
"violent felony" under the ACCA, because it does not have "as an
element the use, attempted use, or threatened use of physical force
against the person of another," is not "burglary, arson, or
extortion," and does not involve the "use of explosives."
See United States v. Garner, 644 Fed.Appx. 880, 881 (11th Cir.
2016), cert. den'd, 137 S. Ct. 1326 (2017)(citing 18 U.S.C. §
924(e)(2)(B)(i)-(ii); Sykes v. United States, 564 U.S. 1, 131 S.Ct.
2267, 2273, 180 L.Ed.2d 60 (2011), overruled on other grounds by
Johnson, 135 S.Ct. at 2551; and, Petite, 703 F.3d at 1293).

The government also concedes correctly that the movant's prior
burglary convictions do not appear to qualify as predicate crimes
of violence under the ACCA. See  See Mathis v. United States, ——
S.Ct. ——, 2016 WL 3434400, *3 (June 23, 2016); see also James v.
United States, 550 U.S. 192, 212, 127 S. Ct. 1586, 1599, 167 L. Ed.
2d 532 (2007) overruled on other grounds by Johnson v. United
States, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015)("We agree that
the inclusion of curtilage takes Florida's underlying offense of
burglary outside the definition of 'generic burglary'...").

Finally, the Eleventh Circuit has also held, post-Johnson,
that a Florida burglary conviction is no longer a "violent felony"
under the ACCA. United States v. Oscar, 877 F.3d 1270, 1293 (11th
Cir. 2017); United States v. Garcia-Martinez, 845 F.3d 1126 (11th
Cir. 2017); and, United States v. Espirit, 841 F.3d 1235 (11th Cir.
2016).

Given the foregoing, the movant's only remaining viable qualifying predicate offense, to support the ACCA enhancement, is movant's prior armed robbery conviction, entered in Case No. F95-21499, in violation of Florida law. The Eleventh Circuit has held that a prior Florida robbery conviction continues to qualify categorically as a violent felony under the elements clause of the Armed Career Criminal Act. See United States v. Fritts, 841 F.3d 937, 939-42 (11th Cir. 2016); United States v. Seabrooks, 839 F.3d 1326, 1338-45 (11th Cir. 2016). Under these circumstances, the movant's §924(g)(1) sentence must be vacated as to Count 4. Without the §924(e)(1) enhancement, the movant sentence exposure under §924(b), dropped from 15 years to no more than 10 years imprisonment. As a result, movant's §922(g)(1) sentence is no longer valid post-Johnson. Therefore, this §2255 motion is due to be granted to the extent that the sentence imposed as to Count 4 must be vacated because it is unlawful post-Johnson. The government argues, however, that resentencing is unwarranted, because the movant was subject to life sentences under §3559© on this and the remaining offenses. As will be demonstrated below, this argument fails.

The Eleventh Circuit has set forth the remedy when a motion to vacate is granted as to an ACCA claim, and what remedy should be applied. See United States v. Hernandez, ___ F.3d ___, 2018 WL 2427573, at *1-4 (11th Cir. May 30, 2018). In Hernandez, the Eleventh Circuit explained:

> Section 2255 allows a federal prisoner to collaterally attack his sentence on the grounds, among others, that the sentence "was imposed in violation of the Constitution or laws of the United States" or "was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). When a district court grants a §2255 motion, it must do two main things. Brown, 879 F.3d at 1235. First, it "must vacate and set the judgment aside." Id.

35

(quotation marks omitted). Second, it "must choose from among four distinct remedies: (1) discharge the prisoner; (2) resentence the prisoner; (3) grant the prisoner a new trial; or (4) correct the prisoner's sentence." Id. The terms "resentence" and "correct" define distinct remedies. Id. at 1236. A "correction" is "a more limited remedy, responding to a specific error," and does not require a resentencing hearing. Id. at 1236 & n.3. A "resentencing," in contrast, is "more open-ended and discretionary, something closer to beginning the sentencing process anew," and requires a resentencing hearing at which the defendant has the right to be present. Id.

Brown sets out the framework for deciding when a resentencing hearing must be held after the grant of a §2255 motion. At bottom, the critical question is whether the sentence modification qualifies as a critical stage of the proceedings, such that due process guarantees the defendant's right to be present. Id. at 1236 (citing Kentucky v. Stincer, 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987)). Two inquiries guide that determination: "First, did the errors requiring the grant of habeas relief undermine the sentence as a whole?"; and "Second, will the sentencing court exercise significant discretion in modifying the defendant's sentence, perhaps on questions the court was not called upon to consider at the original sentencing?" Id. at 1239–40. These inquiries are "fact-intensive." See id. at 1238. When these factors are present, a sentence modification qualifies as a critical stage of the proceedings, and a resentencing hearing with the defendant present is required. Id. at 1240.

As for the first inquiry, a resentencing hearing may be required "[i]f there is a chance that an erroneous sentence on one count of conviction influenced the sentencing judge's decisions on other counts." Id. at 1239.

The general rule is that sentences on multiple counts are "considered as part of a single sentencing package." Id. This reflects an understanding that, "especially in the guidelines era, sentencing on multiple counts is an inherently interrelated, interconnected, and holistic process which requires a court to craft an overall sentence—the 'sentence package'—that reflects the guidelines and the relevant § 3553(a) factors." United

36

States v. Fowler, 749 F.3d 1010, 1015 (11th Cir. 2014). So if there is a chance the error undermined the sentence as a whole, resentencing may be necessary because "merely excising the mistaken sentence for one count won't put the defendant in the same position as if no error had been made." Brown, 879 F.3d at 1239.

As for the second inquiry, a resentencing hearing may be necessary "when a court must exercise its discretion in modifying a sentence in ways it was not called upon to do at the initial sentencing." Id. That may occur, for example, if the original sentencing court did not reach certain issues because it "imposed a mandatory minimum sentence that no longer applies." See id. With no applicable mandatory minimum, the court may need to exercise its discretion—by resolving guideline application issues or addressing the 18 U.S.C. § 3553(a) factors—in ways that were unnecessary at the original sentencing. See id. at 1240. For the same reason, a resentencing hearing may be the defendant's first opportunity to meaningfully address certain issues pertinent to his sentence. Id. at 1239. In these circumstances, due process may require a hearing with the defendant present. See id. at 1239–40.

Applying this framework in Brown, we held that the district court abused its discretion in failing to hold a resentencing hearing before modifying Brown's erroneously ACCA-enhanced sentence to the correct statutory maximum of ten years. First, we said that Brown's entire sentence was undermined by the ACCA-error because the sentence on his "one and only count of conviction was found to be in error." Id. at 1240. Thus, the court "was tasked with crafting an entirely new sentence" based on a different statutory provision and different guideline range. Id. Second, we found that court exercised wide discretion in imposing Brown's new sentence. Id. We noted that, at the original sentencing hearing, the court sentenced Brown to the mandatory minimum and did not discuss the guidelines or the 18 U.S.C. §3553(a). Id. And in modifying the sentence, the court applied a significant upward variance from the corrected guideline range of 77 to 96 months of imprisonment, which was a "clear act of open-ended discretion." Id. at 1241. In light of all of these factors, we held that Brown was entitled to have a resentencing hearing and be present there. Id.

In this case, however, the district court's choice of remedy—a limited correction to the sentence for the §922(g)(1) offense without a hearing—was reasonable under the circumstances....

United States v. Hernandez, ___ F.3d ___, 2018 WL 2427573, at *1–3 (11th Cir. May 30, 2018). The Eleventh Circuit concluded, however, that where a defendant like Hernandez, and by analogy, the movant here, is sentenced on multiple counts of conviction, and where removal of the §924(e) enhancement does not remove the statutory basis for the total sentence imposed, nor does it affect, for example, a §924© sentence, which runs consecutive to any other sentence imposed, then the ACCA error has no effect on movant's guideline range and the error does not undermine the sentence as a whole. Id. Consequently, unless the movant were entitled to vacatur of the §924© or §3559© enhancements, it would not appear that the court would be required to conduct a complete resentencing hearing.

## B. Challenge to the §924© Conviction

Irrespective of the foregoing challenge to the validity of the §922(g) sentence, it also needs to be decided whether the movant's §924© conviction, as charged in Count 5 of the Indictment, based on a conspiracy to commit Hobbs Act robbery offense, as charged in Count 1 of the Indictment, is still lawful under §924©. Movant argues that the predicate offense, conspiracy to commit Hobbs Act robbery, is no longer a crime of violence; and, as such, cannot serve as the underlying predicate to support the §924© conviction. (Cv-DE#s20,22).

As discussed above, if the movant shows that the claim is meritorious, he will have demonstrated cause and prejudice to overcome the procedural default of the claim. The movant argues

that the movant's §924© is no longer a crime of violence under either §924(c)(3)(A) or §924(c)(3)(B), because the predicate conviction of conspiracy to commit Hobbs Act robbery, as charged in Count 5, is not a "crime of violence." (Cv-DE#20).

The movant further draws attention to the fact that the government should be prohibited from raising here an argument here that it withdrew in the codefendant's case. Like movant's case, in the codefendant's case, the government filed a notice withdrawing its argument that the §924© conviction, predicated on the Hobbs Act robbery conspiracy, was lawful under §924(c)(3)(A)'s force clause, because the law was unsettled and evolving whether a conspiracy could serve as a predicate crime of violence. Here, however, the government continues to argue that, like the substantive Hobbs Act robbery offense, the conspiracy offense has an element the "use, attempted use, or threatened use of physical force against the person or property of another;" and, a such the conviction must stand. (Cv-DE#14:7-8). In the alternative, the government argues that the movant's §924© conviction remains lawful because the predicate Hobbs Act robbery conspiracy continues to qualify as a crime of violence under §924(c)(3)(B), the residual clause. (Cv-DE#23:10).

First, it is worth noting at the outset that the Eleventh Circuit has not definitely decided that conspiracy to commit Hobbs Act robbery[14] is a "crime of violence" post-<u>Johnson</u>, much less, post

---

[14]It is well settled in this and other circuits that substantive Hobbs Act robbery "clearly qualifies as a 'crime of violence' under the use of force clause in §924(c)(3)(A). <u>See</u> <u>In re Fleur</u>, 824 F.3d at 1340; <u>In re Rogers</u>, 825 F.3d 1335, 1338 (11 Cir. 2016); <u>see also</u>, <u>United States v. Hill</u>, 832 F.3d 135, 144 (2d Cir. 2016); <u>United States v. Collins</u>, 2016 WL 1639960, at *31 (N.D. Ga. Feb. 9, 2016), <u>report and recommendation adopted by</u>, 2016 WL 1623910 (N.D. Ga. Apr. 25, 2016)("reference to §1915(a) is all that is necessary to determine that the charges here to do indeed satisfy §924(c)(3)(A)'s 'force' clause."); <u>United States v. Brownlow</u>, 2015 WL 6452620, at *4 (N.D. Ala. Oct. 26, 2015)(citing out

the recent Supreme Court decision in <u>DiMaya</u>.[15] Further, the Eleventh Circuit has not definitely determined whether <u>Johnson</u> even applies to §924(c)(3)(B)," and "invalidates sentences that relied" upon it. <u>See</u> <u>In re Fleur</u>, 824 F.3d 1337, 1340 (11 Cir. 2016)(<u>quoting</u> <u>In re Pinder</u>, 824 F.3d 977, 978-79 (11 Cir. 2016)); <u>see also</u>, <u>In re Pinder</u>, 824 F.3d at 979 n.1 (granting second or successive application; stating "law is unsettled" regarding whether section 924© conviction based on Hobbs Act conspiracy can survive <u>Johnson</u>).

The Eleventh Circuit did recognize, however, that "the language in §924© and §924(e) are very similar." <u>In re Pinder</u>, 824 F.3d at 978. In <u>Pinder</u>, the Eleventh Circuit noted that both statutes "require higher sentences once a court decides that an offense is a 'crime of violence,'" and instructs that a court apply the "categorical approach," "'by reference to the elements of the offense, and not the actual facts of the defendant's conduct.'" <u>In re Pinder</u> 824 F.3d at 978 (alterations omitted) (<u>quoting United States v. McGuire</u>, 706 F.3d 1333, 1336 (11 Cir. 2013)). The Eleventh Circuit reasoned that "[alt]hough §924© is phrased a bit differently from §924(e), the §924© language also requires courts to decide if the offense in question 'naturally involves a person acting in disregard of the risk that physical force might be used against another in committing an offense.'" <u>Id</u>. (<u>quoting</u> <u>Leocal v. Ashcroft</u>, 543 U.S. 1, 10 (2004))(alterations omitted).

In <u>McGuire</u>, the Eleventh Circuit emphasized that the categorical approach was to be applied in determining whether an underlying offense constitutes a crime of violence under §924©.

_____

of circuit authority). However, whether conspiracy to commit Hobbs Act robbery also qualifies as a crime of violence under §924(c)(3)(A) is more problematical.

[15]Here, since the parties' briefs filed in 2017, the Supreme Court has decided <u>Sessions v. DiMaya</u>, and neither party has briefed its applicability here.

United States v. McGuire, 706 F.3d 1333, 1336-37 (11th Cir. 2013)(citing United States v. Llanos-Agostadero, 486 F.3d 1194, 1196 (11th Cir. 2007). In so ruling, the Eleventh Circuit explained that the categorical approach is applied because, by the statute's own terms, the court needs to determine whether the defendant "committed 'an offense' that 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another,' or that 'by its nature, involves a substantial risk that physical force against the person or property of another may be used.'" United States v. McGuire, 706 F.3d at 1336-1337 (quoting 18 U.S.C. §924(c)(3)(A)-(B) (emphasis added).

As will be recalled, in Count 5, the movant was charged with violating 18 U.S.C. §924(c)(1)(A), based on his conviction for conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. §1951(a), as charged in Count 1 of the Indictment. Like the ACCA, 18 U.S.C. §924© provides for an enhanced sentence when any person uses, carries, or brandishes a firearm in furtherance of a "crime of violence" or a drug trafficking crime. The movant argues that he is actually innocent of the his §924© conviction, because the conspiracy to commit Hobbs Act robbery, as charged in Count 1 of the Indictment, in violation of 18 U.S.C. §924(c)(1)(A), is not a "crime of violence" as defined under §924(c)(3)(A) ("elements clause") or §924(c)(3)(B) ("the residual clause").

Specifically, under §924©, a "crime of violence" is defined as felony that:

> (A)  has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B)  that by its nature, involves a substantial risk that physical force against

the person or property of another may be used
in the course of committing the offense.

Id. §924(c)(3)(A), (B). The Eleventh Circuit has referred to the
"first prong," §924(c)(3)(A) of the definition above as the "use-
of-force" clause, and refers to the "second prong," §924(c)(3)(B)
of the definition as the "risk-of-force" clause. See Sanchez v.
United States, 717 Fed.Appx. 974 (11 Cir. 2018) (unpublished)
(citing Ovalles v. United States, 861 F.3d 1257, 1263 (11th Cir.
2017), rehearing en banc granted, opinion vacated by Ovalles v.
United States, 889 F.3d 1259 (11th Cir. 2018); see also Marcano v.
United States, 2017 WL 5171194, at *2 (11th Cir. Nov. 8, 2017).

The movant's §924© conviction was predicated upon his
conspiracy to commit Hobbs Act robbery, which criminalizes conduct
of a person who "in any way or degree obstructs, delays, or affects
commerce ... by robbery or extortion or attempts or conspires so to
do, or commits or threatens physical violence to any person or
property in furtherance of a plan or purpose to do anything in
violation of this section...." 18 U.S.C. §1951(a) (alterations
added). "Robbery" is defined as an "unlawful taking ... by means of
actual or threatened force, or violence, or fear of injury...." Id.
§1951(b)(1) (alterations added).

The robbery definition "has as an element the use, attempted
use, or threatened use of physical force against the person or
property of another." See 18 U.S.C. §924(c)(3)(A); see also In re
Fleur, 824 F.3d 1337, 1340 (11th Cir. 2016); United States v.
Anglin, 846 F.3d 954, 965 (7th Cir. 2017) (referring to the
"unbroken consensus" among sister circuits to decide Hobbs Act
robbery is a crime of violence under the elements clause). It is
now clear that a substantive Hobbs Act robbery conviction

42

categorically qualifies as a "crime of violence" under the use-of-force clause of section 924(c)(3), regardless of whether <u>Johnson</u> applies to §924(c)(3)(B)'s residual clause. <u>See</u> <u>In re Fleur</u>, 824 F.3d 1337, 1340 (11 Cir. 2016)(finding companion conviction for Hobbs Act robbery, charged in the same Indictment as the §924© count, clearly qualifies as a "crime of violence" under the use-of-force clause in §924(c)(3)(A)).

However, it is not clear whether **conspiracy** to commit Hobbs Act robbery constitutes a crime of violence under §924(c)(3)(A) or (B)'s residual or elements clause. Conspiracy to violate the Hobbs Act requires the following elements: (1) an agreement between two or more people to commit a Hobbs Act robbery or extortion; (2) the defendant knew of the conspiratorial goal; and, (3) the defendant voluntarily participated in furthering the conspiratorial goal. <u>See</u> <u>United States v. Ransfer</u>, 749 F.3d 914, 930 (11 Cir. 2014); <u>see</u> <u>also</u>, <u>United States v. Pringle</u>, 350 F.3d 1172, 1176 (11th Cir. 2003). However, the Government need not prove an overt act in furtherance of the conspiracy. <u>See</u> <u>Duhart v. United States</u>, No. 08-60309-CR, 2016 WL 4720424, at *6 (S.D. Fla. Sept. 9, 2016) (<u>citing</u> <u>United States v. Pistone</u>, 177 F.3d 957, 959-60 (11th Cir. 1999) (upholding conviction where defendant did no more than agree and plan to commit robbery, but took no over act)). Moreover, there is no requirement that the defendant "was even capable of committing" the underlying Hobbs Act offense. <u>Ocasio v. United States</u>, 136 S.Ct. 1423, 1432 (2016).

The district court here has previously noted that conspiracy to commit Hobbs Act robbery presents "a somewhat thornier question." <u>See</u> <u>Morton v. United States</u>, 2017 WL 1041568, at *3 (11 Cir. Mar. 2, 2017). Following the categorical approach, the "least culpable means" of conspiring to commit a Hobbs Act robbery, as

movant suggests, would require entering a verbal or written agreement to commit a Hobbs Act robbery. This application of the statute does not appear to "ha[ve] as an element the use, attempted use, or threatened use of physical force." 18 U.S.C. §924(c)(3)(A) (alteration added).[16]

It is also worth mentioning that the district court stressed in <u>Morton v. United States</u>, 2017 WL 1041568, at *3 (11 Cir. Mar. 2, 2017) that:[17]

> Any analysis of <u>Johnson</u>'s applicability must therefore be postponed unless and until the Court makes the determination the companions convictions are not crimes of violence under section 924(c)'s use-of-force clause. <u>See</u> <u>United States v. Albertini</u>, 472 U.S. 675, 680 (11 Cir. 1985)(stating courts must generally exercise judicial restraint and construe statutes "to avoid constitutional questions").

Based on the foregoing reasoning, the court could, at this juncture, exercise judicial restraint until such time as the Eleventh Circuit or Supreme Court determines that the companion conviction, conspiracy to commit Hobbs Act robbery is not a crime of violence under §924(c)'s use of force clause.

Nonetheless, the government argues that conspiracy to commit

---

[16]In the codefendant's case, the district court did not apply the categorical approach, finding that "the practical difficulties of re-trying the factual basis for a prior conviction in a subsequent proceeding," at issue in <u>Johnson</u> and the ACCA, which are not present in a §924(c) case. <u>See</u> <u>United States v. Jenkins</u>, S.D. Fla., Case No. 13-20334-Cr-Altonaga, DE#182:5 (<u>quoting</u> <u>United States v. Jimenez-Segura</u>, 206 F.Supp.3d 1115, 1132, at **12 (<u>citing</u> <u>cf</u>. <u>Taylor v. United States</u>, 495 U.S. 575, 598-602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)).

[17]An appeal has been filed on May 2, 2017 and remains pending before the Eleventh Circuit.

Hobbs Act robbery constitutes a crime of violence, raising very similar arguments to those it raised in relation to why §16(b) should be distinguished from the ACCA residual clause, all of which were rejected by the Supreme Court in <u>DiMaya</u>. Many district courts that have agreed with the government have found, post-<u>Johnson</u>, that conspiracy to commit Hobbs Act robbery remains a crime of violence, have done so under §924(c)(3)(B)'s risk-of-force/residual clause. <u>See Sylvain v United States</u>, 2017 WL 944070, at **9-10 (S.D. Fla. Aug. 3, 2017) (finding conspiracy to commit Hobbs Act robbery is a crime of violence pre-<u>DiMaya</u>, relying in part on <u>Morton v. United States</u>, 2017 WL 2104158 at *6; <u>States v. Turner</u>, 501 F.3d 59, 67-68 (1st Cir. 2007); <u>United States v. Phan</u>, 121 F.3d 149, 152-53 & n.7 (4th Cir. 1997)); <u>United States v. Hernandez</u>, 2017 WL 111730, at *9-10 (D. Me. Jan. 11, 2017) (concluding that Hobbs act conspiracy is not a crime of violence under the force clause, but it is a crime of violence under the residual clause); <u>Hernandez v. United States</u>, 2016 WL 7250676, at *3-5 (S.D. Cal. Nov. 7, 2016); and, <u>United States v. Williams</u>, 179 F.Supp.3d 141, 154-55 (D. Me. 2016)); <u>see also</u>, <u>United States v. Hill</u>, 832 F.3d 135, 145 (2d Cir. 2016).

### i. **Elements Clause**

To determine whether, under the categorical approach, conspiracy to commit Hobbs Act robbery constitutes a crime of violence, under the elements clause, pursuant to §924(C)(3)(A), cases published since <u>Johnson</u>, as cited by the Eleventh Circuit, in <u>Pinder</u>, indicates that it does not. <u>See In re Pinder</u>, 824 F.3d 977, 979 (11 Cir. 2016)(<u>citing</u> <u>United States v. Vivas-Ceja</u>, 808 F.3d 719, 723 (7th Cir. 2015) and <u>Dimaya v. Lynch</u>, 803 F.3d 1110, 1120 (9th Cir. 2015)). <u>See</u> <u>also</u>, <u>United States v. Edmundson</u>, 153 F.Supp.3d 857, 864, 2015 WL 9311983, at *6 (D. Md. 2015), as

amended (Dec. 30, 2015)(holding that "the elements of neither conspiracy offense require the defendant to commit an overt act in furtherance of the conspiracy. Accordingly, ... conspiracy to commit Hobbs Act robbery does not have as an element, the use, attempted use, or threatened use of physical force of physical force against the person or property of another, and therefore does not fall within the §924© force clause."); see also, United States v. Luong, 2016 WL 1588495, at *3 (E.D. Cal., Apr. 20, 2016)(relying on Ninth Circuit precedent to determine that "conspiracy to commit Hobbs Act robbery does not have as an element the use or attempted use of physical force and is not a crime of violence under the force clause.").

When considering the least culpable way of committing a Hobbs Act robbery conspiracy, the Eleventh Circuit has suggested that such a conviction is unlawful where the defendant did no more than agree and plan to commit the robbery, but did not commit an overt act in furtherance thereof. See United States v. Pistone, 177 F.3d at 959. Consequently, it appears that a defendant cannot be found guilty of a Hobbs Act robbery conspiracy without the use, attempted use, or threatened use of violent, physical force. Therefore, as suggested by the cases referenced above, Hobbs Act robbery conspiracy is categorically overly broad and does not constitute a "crime of violence," pursuant to §924(c)(3)(A), the elements clause.

Pre-DiMaya courts in this district have also held that Hobbs Act robbery conspiracy no longer qualifies as a crime of violence under §924(c)'s elements clause. See e.g., Mann v. United States, U.S.D.C., S.D. of Fla., Case No. 16-22605-Civ-Ungaro (March 16, 2017)(Cv-DE#22) (finding Hobbs Act robbery conspiracy is not a crime of violence under §924(c)'s elements clause); Jardines v.

United States, U.S.D.C., S.D. of Fla., Case No. 16-22604-Civ-Ungaro (March 3, 2016)(same); Duhart v. United States, U.S.D.C., S.D. of Fla., Case No. 16-61499-Civ-Marra (Sept. 9, 2016)(holding Hobbs Act robbery conspiracy does not qualify as a crime of violence under the elements clause because there is "neither a requirement that the defendant engage in an overt act in furtherance of the conspiracy," nor that a defendant was "even capable of committing" the underlying offense). Further, in movant's coconspirator's case, the government withdrew its argument that Hobbs Act robbery conspiracy was a crime of violence under §924(c)'s force/elements clause. See United States v. Jenkins, U.S.D.C. S.D. of Fla., Case No. 13-20334-Cr-Altonaga (Cr-DE#185) (Nov. 9, 2016).

### ii. **Risk-of-Force Clause**

If, as determined above, the Hobbs Act robbery conspiracy is not a crime of violence under §924(c)'s elements clause, it still needs to be determined whether Hobbs Act robbery conspiracy remains a "crime of violence" under §924(c)(3)(B)'s risk-of-force/residual clause. Suffice it to say that the courts are split on whether the reasoning in Johnson makes the residual clause of §924(c)(3)(B) unconstitutionally vague. If, however, the court finds that §924(c)(3)(B) suffers from the same vagueness challenge to the ACCA residual clause, then movant's conspiracy to commit Hobbs Act robbery does not constitute a crime of violence, as that term is defined in §924(c)(3)(B).

Neither the Eleventh Circuit nor the Supreme Court have explicitly ruled on the issue. Some district courts in this and other circuits have found §924(c)(3)(B) unconstitutionally vague. See Duhart v. United States, 2016 WL 4720424 (S.D. Fla. Sept. 9, 2016); Horne v. United States, 2018 WL 1378976, at *4 (S.D. Ind.

Mar. 19, 2018) (§924(c)(3)(B) unconstitutionally vague).

However, there appears to be no clear consensus and, in fact, a split amongst the courts is emerging on whether §924(c)(3)(B) is constitutionally vague in light of <u>Johnson</u>. For example, the Second, Sixth, and Eighth Circuit Court of Appeals have rejected the arguments, finding post-<u>Johnson</u> that a Hobbs Act robbery conspiracy is not unconstitutionally vague under §924(c)(3)(B). <u>See</u> <u>United States v. Hill</u>, 823 F.3d 135 (2d Cir. 2016); <u>United States v. Taylor</u>, 814 F.3d 340 (6th Cir. 2016);[18] and, <u>United States v. Prickett</u>, 839 F.3d 697 (8th Cir. 2016). Other courts, however, have found that §924(c)(3)(B) is no longer valid post-<u>Johnson</u>, because it too is unconstitutionally vague. <u>See</u> <u>Vasquez v. United States</u>, S.D. of Fla., Case No. 16-14247-Civ-Martinez (S.D. Fla. 2017); <u>Duhart v. United States</u>, 2016 WL 4720424 (S.D. Fla. 2016); <u>Hernandez v. United States</u>, S.D. of Fla., Case No. 16-cv-22657-PCH (S.D. Fla. 2016); <u>United States v. Bell</u>, 158 F. Supp.3d (N.D. Cal. 2016); <u>United States v. Lattanaphom</u>, 159 F.Supp.3d 1157 (E.D. Cal. 2016); and, <u>United States v. Edmundson</u>, 153 F.Supp.3d 857 (D. MD. 2015).

A comparison of the language of the ACCA residual clause with §924(c)(3)(B)'s residual clause reveals that §924(c)(3)(B) suffers from the same defects as the ACCA's residual clause, requiring judges to assess the risk of injury associated with a defendant's prior convictions using a categorical approach, and then weigh the danger posed by those idealized offenses against the serious potential risk" standard. <u>See</u> <u>Johnson v. United States</u>, ___ U.S. at ___, 135 S.Ct. 2557.

---

[18] In <u>Shuti v. Lynch</u>, 828 F.3d 440, 450 (6 Cir. 2016), the Sixth Circuit found §16(b) unconstitutionally vague, but upheld the constitutionality of §924(c)(3)(B).

The government postures that the two clauses are contextually different, thus permitting a more reliable risk determination than the ACCA. While there are some contextual differences, the fundamental problem in applying the objective, ordinary case test to a risk-based measure remains. Like the ACCA, §924(c)(3)(B) requires courts to (1) imagine what kind of conduct the "ordinary case" involves, rather than analyzing actual facts or statutory elements; and, (2) to then ascertain whether there exists, in the imagined case, a "substantial risk" that physical force will be used. See Benitez v. United States, 13-CR-20606-UU, 2017 WL 2271504, at *2-3 (S.D. Fla. Apr. 6, 2017). As noted previously, under §924(c)(3)(B), "crime of violence" includes offenses "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." In DiMaya, the Supreme Court made clear that §16(b)'s definition, like the ACCA's residual clause were void for vagueness, rejecting the government's argument there that any assessment of risk is more reliable under §16(b). See DiMaya v. Sessions, ___ U.S. at ____, 138 S.Ct. at 1221 (the "variance in wording cannot make ACCA's residual clause vague and §16(b)'s not."). In fact, in rejecting many of the government's arguments, which are again repeated here, the DiMaya court stated:

> As described earlier, Johnson found residual clause's vagueness to reside in just 'two' of its features: the ordinary-case requirement and a fuzzy risk standard. See 576 U.S. at ____, 135 S.Ct. at 2557-2558; supra, at 1213-1214. Strip away the enumerated crimes–as Congress did in §16(b)–and those dual flaws yet remain. And ditto the textual indeterminacy that flows from them.

Sessions v. DiMaya, ____ U.S. at ____, 138 S.Ct. at 1221. With these principles in mind, the §924(c)(3)(B)'s residual clause fares

no better. As the Supreme Court has instructed in the context of §924(e) in <u>Johnson</u> and in the §16(b) context in <u>DiMaya</u>, "none of the minor linguistic disparities in the statutes makes any real difference," because §924(C)(3)(B)'s residual clause also "produces more unpredictability and arbitrariness than the Due Process Clause tolerates." <u>Sessions v. DiMaya</u>, ___ U.S. at ____, 138 S.Ct. at 2259 (quoting <u>Johnson</u>, ___ U.S. at ____, 135 S.Ct. at 2558). <u>See also United States v. Salas</u>, 889 F.3d 681, 685 (10 Cir. 2018) (Finding §924(c)(3)(B) void for vagueness, noting that "[U]ltimately §924(c)(3)(B) possesses the same features as the ACCA's residual clause and §16(b) that combine to produce 'more unpredictability and arbitrariness than the Due Process tolerates....' and <u>DiMaya</u>'s reasoning for invaliding §16(b) applies equally to §924(c)(3)(B).").

Therefore, for all of the foregoing reasons, the movant motion should be granted, and his conviction and resultant sentence as to Count 5, for using and carrying a firearm and possessing a firearm in furtherance of a crime of violence, as charged in Count 1, the Hobbs Act robbery conspiracy, should be vacated. Finally, as noted in relation to his challenge under §922(g), as will be demonstrated below, this §2255 motion is due to be granted because the movant's §3559© enhancement also cannot stand.

## C. <u>Challenge to the §3559© Enhancement</u>

In **claim 1**, movant asserts that he was denied effective assistance of counsel, where his lawyer failed to object to the fact that the movant did not qualify for an enhanced sentence, pursuant to 18 U.S.C. §3559©. (Cv-DE#1:4; Cv-DE#4:3-5,8-9). In his amendments (Cv-DE#s20,21), movant argues that <u>Johnson</u> extends to §3559© and invalidates the statute's residual clause. (<u>Id</u>.). Movant

also argues, his present convictions as to Counts 1 and 5 are not "serious violent felonies," and he does not have the required two or more prior qualifying convictions under the statute's elements or enumerated offenses clause. (<u>Id</u>.). In related **claim 4**, movant argues maintains that post-<u>Johnson</u> his enhancement as to Count 5, and his conviction as to Count 1 are no longer lawful, because §3559© suffers from the same fatal defect as the residual clauses found unconstitutionally vague in <u>Johnson</u> and <u>DiMaya</u>. (Cv-DE#11:7; (Cv-DE#20:2; Cv-DE#21; Cv-DE#23:15).

### i. <u>Law Re 18 U.S.C. §3559©</u>

The Federal Three Strikes Act, 18 U.S.C. 3559(c)(1), provides for a mandatory life imprisonment for any individual who is convicted of a "serious violent felony" and who has previously been convicted of, *inter alia*, two or more "serious violent felonies":

> **Mandatory life imprisonment.--**Notwithstanding any other provision of law, a person who is convicted in a court of the United States of a serious violent felony shall be sentenced to life imprisonment if—
>
> (A) the person has been convicted (and those convictions have become final) on separate prior occasions in a court of the United States or of a State of—
>
> (i) **2 or more serious violent felonies**; or
>
> (ii) one or more serious violent felonies and one or more serious drug offenses; and
>
> (B) each serious violent felony or serious drug offense used as a basis for sentencing under this subsection, other than the first, was committed after the defendant's conviction in the preceding serious violent felony or serious drug offense.

18 U.S.C. §3559(c)(1)(A),(B) (emphasis added).

Under the Three Strikes Act, the term "serious violent felony," as defined in 18 U.S.C. §3559(c)(2)(F), contains an **enumerated offenses clause** (§3559(c)(2)(F)(i)); an **elements/use of force clause** (first portion of §3559(c)(2)(F)(ii)); and, what can be referred to as a **residual clause** (the latter portion of §3559(c)(2)(F)(ii)). Subsection (i), the enumerated offenses clause, lists specific qualifying offenses, which include murder, manslaughter, certain sexual offenses, aircraft piracy, robbery, carjacking, arson, and certain firearms charges. See 18 U.S.C. §3559(c)(2)(F)(i).

In subsection (ii), Congress defined "serious violent felony" to include:

> any other offense punishable by a maximum term of imprisonment of 10 years or more that *has as an element the use, attempted use, or threatened use of physical force against the person of another* or that, <u>by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense.</u>

18 U.S.C. §3559(c)(2)(F)(ii). The ***italicized*** elements/use-of-force clause above is identical to those of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. §924(e)(2)(B)(i), and the career offender guidelines, U.S.S.G. §4B1.2(a)(1). The Three Strikes Act is only distinguishable or otherwise differs in that it is preceded by language requiring that the prior offense be punishable by a maximum term of 10 years or more of imprisonment. It is also evident that the **<u>underlined</u>** residual clause of §3559(c)(2)(F)(ii) is virtually indistinguishable from the language contained in 18

U.S.C. §924(c)(3)(B) and 18 U.S.C. §16(b). The only difference between the two being that §3559© does not include physical force against the property of another.

The three strikes statute further defines "nonqualifying felonies," under §3559(c)(3), to include:

> (A)  Robbery in certain cases.–Robbery, an attempt, conspiracy, or solicitation to commit robbery; or an offense described in paragraph (2)(F)(ii) shall not serve as a basis for sentencing under this subsection if the defendant establishes by clear and convincing evidence that—
>
> > (i)  no firearm or other dangerous weapon was used in the offense and no threat of use of a firearm or other dangerous weapon was involved in the offense; and
> >
> > (ii)  the offense did not result in death or serious bodily injury ... to any person.
>
> (B)  Arson in certain cases.–Arson shall not serve as a basis for sentencing under this subsection if the defendant establishes by clear and convincing evidence that--
>
> > (i)  the offense poses no threat to human life; and
> >
> > (ii)  the defendant reasonably believed the offense posed no threat to human life.

18 U.S.C. §3559(c)(3)(A)-(B).

"Section 3559(c)(1) places the burden on the government to demonstrate that a defendant was convicted of at least two prior offenses that qualify as 'serious violent felonies' under §3559(c)(2)(F)." See e.g., United States v. Kaluna, 192 F.3d 1188, 1193–94 (9th Cir. 1999). If a defendant asserts that a prior offense is a "nonqualifying felony" under §3559(c)(3)(A), the

burden shifts to the defendant to prove this affirmative defense by
clear and convincing evidence. United States v. Kaluna, 192 F.3d at
1196. However, past offenses need not fulfill the requirements of
both subsection (i) and (ii) to count as "serious violent
felonies." United States v. Rosario-Delgado, 198 F.3d 1354, 1356-57
(11th Cir.1999).

Thus, courts to have considered the issue have consistently
determined that the affirmative defense provision of §3559© affords
a defendant an avenue by which to challenge the status of a prior
conviction that is a serious violent felony, which would otherwise
constitute a strike, requiring him to prove by the heightened
standard of clear and convincing evidence that his prior
convictions were nonqualifying felonies. United States v. Bradshaw,
281 F.3d 278 (1 Cir. 2002), cert. denied, 537 U.S. 1049 (2002);
United States v. Brown, 276 F.3d 930 (7 Cir. 2002); United States
v. Gray, 260 F.3d 1267 (11 Cir. 2001)(the three strikes statute
contains a disqualification provision, or an affirmative defense,
that provides a defendant with the opportunity to prove that an
otherwise qualifying conviction does not constitute a "strike"
under the statute); United States v. Kaluna, 192 F.3d 1188, 1193-94
(9 Cir. 1999)(stating that if a defendant asserts that a prior
offense is a "nonqualifying felony" under §3559(c)(3)(A), the
burden shifts to the defendant to prove this affirmative defense by
clear and convincing evidence); United States v. Romero, 122 F.3d
1334, 1342 (10 Cir. 1997)(even if a crime meets the definition of
a serious violent felony, the crime does not necessarily constitute
a "strike" against the defendant if the defendant establishes, by
clear and convincing evidence, that: (i) no firearm or other
dangerous weapon was used in the offense and no threat of use of a
firearm or other dangerous weapon was involved in the offense; and
(ii) the offense did not result in death or serious bodily injury

54

to any person).

## ii. Analysis

With the foregoing principles in mind, in its §3559© notice, the government argued that, if the movant was convicted of either of the offenses alleged in Counts 1 or 5 of the Indictment, both of which it argues qualify as "serious violent felonies," as that term is defined in 18 U.S.C. §3559©, the movant would be subject to a term of life imprisonment, having been previously convicted of the following qualifying predicate offenses:

1. February 23, 2016 conviction, entered in Miami-Dade County, Circuit Court, **Case No. F95-21499**, for armed robbery, in violation of <u>Fla.Stat</u>. §812.13(2)(a),(b); §784.045(1)(b);

2. March 25, 2010 conviction, entered in Miami-Dade County, Circuit Court, **Case No. F06-28846A**, for burglary of an unoccupied structure, in violation of <u>Fla.Stat</u>. §810.02(4)(A) and §775.084(4);

3. June 12, 2012 conviction, entered in Miami-Dade County, Circuit Court, **Case No. F12-6583**, for fleeing and eluding, in violation of <u>Fla.Stat</u>. §316.1935(2); and,

(Cr-DE#28:1-2).

Following a jury verdict, movant was found guilty as charged, as to Counts 1 and 5 of the Indictment. Thus, it first needs to be determined whether either one of the offenses of conviction constitute "serious violent felonies" for purposes of §3559©. Neither the Eleventh Circuit, nor the Supreme Court has explicitly

found that either constitute serious violent felonies post-<u>Johnson</u> and <u>DiMaya</u>.

However, that does not end the inquiry. If, the movant's conviction cannot stand under §3559(c)'s residual clause, it is nonetheless due to be affirmed if it qualifies as a "crime of violence" under the force clause in §3559©. The force clause of §3559© requires that the offense "has as an element the use, attempted use, or threatened use of physical force against the person of another." As will be recalled, the jury found the movant guilty of violating §924©, based on the predicate conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. §1951(a), as charged in Count 1 of the Indictment. (Cr-DE#79).

a.   **Conspiracy to Commit Hobbs Act Robbery**. The movant argues that his conviction as to Count 1, for conspiracy to commit Hobbs Act robbery, is not a qualifying serious violent felony conviction for purposes of the §3559© enhancement. (Cv-DE#s20-21). For the reasons previously stated in this Report, it remains the recommendation that the Hobbs Act robbery conspiracy is not a serious violent felony. Even assuming, without deciding that it is, the movant does not have the required predicate offenses to support the §3559© enhancement as to Count 1, as will be demonstrated below, and as previously discussed in this Report.

b.   **Movant's Section 924(c) Conviction**. Further, not to be belabor the issue here, but for the reasons previously stated herein, movant's §924© conviction, predicated on a Hobbs Act robbery conspiracy, is also unlawful. Likewise, even if the court finds that Counts 1 or 5 of the Indictment were lawful, the movant still does not have the required two predicate convictions that constitute a "serious violent felony" to support the §3559©

enhancement.

According to the government, the movant's prior predicate convictions for armed robbery and burglary of an unoccupied structure, as enumerated in paragraphs 1 and 2, above, constitute "serious violent felonies" under §3559(c)(2)(F)(ii), because Florida law punishes each violation for a term exceeding 10 years imprisonment, involved the prospect of substantial risk of harm, and as to the armed robbery, it is specifically an enumerated offense. (Cv-DE#7:7; Cv-DE#14:12; Cv-DE#22:9).

However, post-Johnson, courts have made clear that a Florida burglary conviction is not a "violent felony" and thus not a proper qualifying predicate, taking the definition of "burglary" outside the generic definition for the offense. See Mathis v. United States, ___ U.S. ___, ___, 136 S. Ct. 2243, 2248 (2016); see also James v. United States, 550 U.S. 192, 212, 127 S. Ct. 1586, 1599, 167 L. Ed. 2d 532 (2007) overruled on other grounds by Johnson v. United States, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015)("We agree that the inclusion of curtilage takes Florida's underlying offense of burglary outside the definition of 'generic burglary'..."); United States v. Oscar, 877 F.3d 1270, 1293 (11th Cir. 2017); United States v. Garcia-Martinez, 845 F.3d 1126 (11th Cir. 2017); and, United States v. Espirit, 841 F.3d 1235 (11th Cir. 2016).

Review of the PSI also reveals that movant's prior fleeing and eluding convictions cannot support the §3559© enhancement. Post-Johnson, the Eleventh Circuit has held that Florida's fleeing and eluding statute no longer qualifies as a "violent felony" under the ACCA, because it does not have "as an element the use, attempted use, or threatened use of physical force against the person of another," is not "burglary, arson, or extortion," and does not

involve the "use of explosives." See United States v. Garner, 644 Fed.Appx. 880, 881 (11th Cir. 2016), cert. den'd, 137 S. Ct. 1326 (2017)(citing 18 U.S.C. § 924(e)(2)(B)(i)-(ii); Sykes v. United States, 564 U.S. 1, 131 S.Ct. 2267, 2273, 180 L.Ed.2d 60 (2011), overruled on other grounds by Johnson, 135 S.Ct. at 2551; and, Petite, 703 F.3d at 1293).

Therefore, the only remaining proper qualifying predicate offense appears to be the movant's prior armed robbery conviction, entered in Case No. F95-21499, in violation of Florida law. The Eleventh Circuit has held that a prior Florida robbery conviction continues to categorically qualify as a violent felony under the elements clause of the Armed Career Criminal Act. See United States v. Fritts, 841 F.3d 937, 939-42 (11th Cir. 2016); United States v. Seabrooks, 839 F.3d 1326, 1338-45 (11th Cir. 2016). Since the movant only has the one qualifying predicate to support the enhancement under §3559©, his sentences as to Counts 1 and 5 must be vacated as they are no longer valid post-Johnson. Therefore, this §2255 motion is due to be granted to the extent that the sentence imposed as to Count 1, 2 and 5 must be vacated, because they are no longer lawful post-Johnson.

Under the totality of the circumstances present here, movant has shown deficiency and prejudice arising from counsel's failure to raise the issues prior to trial and/or at sentencing, and then on appeal. See Strickland, supra. Even if the state of the law at the time was in flux, alternatively the movant has shown cause and prejudice to overcome the procedural default of the arguments raised in this §2255 proceeding.

## D. **Remaining Claims**

## 1. <u>Challenge to Jury Instructions</u>

In **claim 2**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to request a special jury instruction and corresponding verdict form requiring that the jury determine the amount of drugs the movant actually possessed or distributed. (Cv-DE#1:5; Cv-DE#4:6). Movant suggests it was counsel's obligation to ensure that a special verdict form was submitted to the jury asking them to "fill in the type and amount of drugs" that the movant possessed or distributed. (Cv-DE#4:6). Movant maintains that had the request been made, the court would have incorporated such a request into its instructions to the jury, who, in turn, would have found that the movant was only responsible for four (4) kilograms of cocaine. (<u>Id</u>.). According to the movant, the undercover officer agreed to keep seven (7) kilograms, and that it was reasonable to infer that the remaining eight (8) kilograms would be split evenly between the movant and his coconspirator, resulting in the movant being accountable for only four (4) kilograms. (<u>Id</u>.:7).

As will be recalled, in Count 2 of the Indictment, the movant was charged with conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §841(a)(1), §841(b)(1)(A)(ii), and §846. (Cr-DE#12). Contrary to the representations made herein, the jury was, in fact, provided with a special verdict form. (Cr-DE#80). Regarding Count 2, the verdict form provided the following:

> 2.   We, the Jury, unanimously find the Defendant, JOSEPH PETER CLARKE, as to **Count 2** of the Indictment:
>
> GUILTY_____     NOT GUILTY_____
>
> (a)   If you find the Defendant not guilty as

charged in **Count 2,** please skip to paragraph 3. However, if you find the Defendant guilty as to Count 2, please see proceed to paragraph (b) below.

(b)    We, the Jury, having found the Defendant guilty of the offense charged in **Count 2,** further find with respect to that Count that he conspired to possess with intent to distribute [the] following controlled substance in the amount shown (place an X in the appropriate box):

(i)    5 kilograms or more of cocaine     [   ]

(ii)   Between 500 and 5 kilograms of     [   ]
cocaine

(iii)  Less than 500 grams of cocaine     [   ]

(Cr-DE#80:2).

The jury was instructed that Count 2 charged the movant with conspiracy "to possess with intent to distribute cocaine." (Cr-DE#79:2). The court further instructed:

As to Count 2, it is a federal crime for anyone to conspire to knowingly possess with intent to distribute or import cocaine. Title 21 United States Code Section 841(a)(1) make it a crime for anyone to knowingly possess cocaine with intent to distribute it.

My previous instruction regarding conspiracy apply equally to Count 2 and are not repeated here.

The Defendant can be found guilty only if all the following facts are proved beyond a reasonable doubt:

1)    two or more people in some way agreed to try to accomplish a shared and unlawful plan to possess or import cocaine; and

2)    the Defendant knew the unlawful purpose of the plan and willfully joined in it; and

60

> 3)      the object of the unlawful plan was to possess with the intent to distribute more than five kilograms of cocaine.

(Cr-DE#79:5).

As argued correctly by the government, and as reflected above, the verdict form and instructions were proper as it relates to Count 2 of the Indictment. Movant is mistaken in his representation that the jury was never asked to make a determination of the quantity and type of drugs. (Cv-DE#10). Regarding the type of drugs, it was, in fact, charged in the indictment as cocaine. The instruction clearly set forth that the subject was cocaine, and the verdict form left it to the jury to decide, based on the evidence presented to it, whether the amount involved was at a minimum, less than 500 grams, or at a maximum, it involved 5 kilograms or more. The jury returned its verdict, finding the movant guilty of a conspiracy involving 5 kilograms or more of cocaine. (Cr-DE#80). Consequently, movant has not demonstrated here that counsel was deficient or that he suffered prejudiced under <u>Strickland</u> arising from counsel's failure to pursue this issue either at trial or on appeal. Relief is not warranted on this claim that is clearly refuted by the record.

## 2. **Failure to Object to Specific Offense Characteristics**

Movant commingles in relation to **claim 2** that counsel failed to object to paragraph 21 of the PSI, which added two levels to the base offense level based because the movant used violence, made a credible threat to use violence, or directed the use of violence, pursuant to U.S.S.G. §2D1.1(b)(2). (PSI ¶21).

The PSI and the evidence at trial, as narrated previously in

this report, reveal that on April 24, 2013, the movant and his coconspirator, Bobby Jenkins met with the undercover officer and the confidential informant, at which time they indicated that they were ready to commit the robbery as proposed by the undercover officer. (PSI ¶8). During that meeting, a discussion arose regarding the possibility of a confrontation ensuing within the stash once the movant and his coconspirator entered to rob the occupants of the drugs contained therein. (Id.). The movant stated, "when I pull that trigger, I'm dropping your ass and that's the end of it." (PSI ¶9). In fact, the facts, as summarized on appeal, revealed that the movant had made the suggestion to "kill" the occupants of the drug stash house "so that no one would know Detective Veloz was associated with them." See United States v. Clarke, 649 Fed.Appx. 837, 840-41 (11 Cir. 2016); (Cr-DE#156). Further, the movant indicated during that meeting that he would "need to 'hit' Detective Veloz to make it look like Detective Veloz was not involved." See United States v. Clarke, supra.

Given the foregoing, movant has not demonstrated here that, even if counsel had objected to the initial 2-level enhancement, as contained in the PSI, pursuant to U.S.S.G. §2D1.1(b)(2), that the objection would have been sustained. There was sufficient evidence adduced at trial, and as contained in the PSI, to support the finding that the movant made a credible threat to use violence. Regardless, the 2-level enhancement did not affect his guideline exposure which was triggered by the §3559© and armed career criminal enhancements. Therefore, he cannot demonstrate deficiency or prejudice under Strickland arising from counsel's failure to pursue this nonmeritorious issue either at sentencing or on appeal.

## IX.  Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal, but must obtain a certificate of appealability ("COA"). <u>See</u> 28 U.S.C. §2253(c)(1); <u>Harbison v. Bell</u>, 556 U.S. 180, 129 S.Ct. 1481 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." <u>See</u> 28 U.S.C. §2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id</u>. Upon consideration of the record as a whole, this Court should deny a certificate of appealability. Notwithstanding, if petitioner does not agree, he may bring this argument to the attention of the district judge in objections.

## X. <u>Conclusion</u>

Based on the foregoing, it is recommended that the movant's motion be GRANTED; the underlying judgment be vacated and a resentencing hearing be held consistent with the findings contained herein.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar plaintiff from a *de novo*

determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge except upon grounds of plain error or manifest injustice. See 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790,794 (1989); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

Signed this 31st day of July, 2018.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Arthur Louis Wallace, III, Esquire
     Attorney for Movant
     2211 E. Sample Road, Suite 203
     Lighthouse Point, FL 33064
     Email: WallaceLawFirm@Yahoo.com

     Ignacio Jesus Vazquez, Jr., AUSA
     United States Attorney's Office
     Miami Special Prosecutions Section
     99 Northeast 4th Street, Room 806
     Miami, FL 33132
     Email: ignacio.vazquez@usdoj.gov